In re Stephan George
CLEVELAND, Debtor.

UNITED STATES of America,
Plaintiff/Appellee,

v.

Stephan George CLEVELAND,
Defendant/Appellant.

BAP No. SC 87–1232 MoAsV.
Bankruptcy No. 85–05242 H–13.
Adv. No. C86–0182 H13.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted March 17, 1988.

Decided Aug. 9, 1988.

Robert S. Norwood, Santa Ana, Cal., for defendant/appellant.

Robert A. Plaxico, Asst. U.S. Atty., San Diego, Cal., for plaintiff/appellee.

Before MOOREMAN, ASHLAND and VOLINN, Bankruptcy Judges.

ROBERT G. MOOREMAN,
Bankruptcy Judge:

This appeal arises out of the bankruptcy court's decision in *In re Cleveland*, 64 B.R. 810 (Bankr.S.D.Cal.1986), which determined that pursuant to 42 U.S.C. § 294f(g), Health Education Assistance Loans (HEAL Loans) are nondischargeable under 11 U.S. C. § 1328(a). The basis of the decision was that § 294f(g) provides for a limited exception to the "super discharge" of § 1328(a) in the Bankruptcy Code.

### FACTS

In June 1983, the debtor applied for and obtained a $12,000 HEAL Loan in order to attend the California School of Professional Psychology.[1] Apparently the debtor was later dropped from the enrollment of the school because of poor academic performance. As a result, the HEAL Loan became due in May 1985. In October 1985, the debtor filed his Chapter 13 petition, listing seven creditors with claims totaling approximately $35,000, most of which ($30,752),

---

1. The loan was issued by the First American Bank of Washington D.C., who in turn sold the loan to Student Loan Marketing Association (SLMA). Pursuant to 42 U.S.C. § 294, such loans are fully insured by the Department of Health & Human Services (HHS) (the appellee in this case) in the event of default or bankruptcy.

were student loans. The then present holder of the note, SLMA (see nt. 1), received notice of the debtor's confirmation hearing, however, no specific objections to the discharge of the HEAL Loan were made. The debtor's plan was approved by the bankruptcy court on January 13, 1986.[2]

Pursuant to the loan guarantee provisions of the HEAL Loan, HHS paid SLMA in February 1986 and received an assignment of the note. Accordingly, in February 1986, the United States filed a proof of claim, later followed by a Complaint to Determine Dischargeability of the HEAL Loan, a motion for summary judgment on the complaint and a motion to vacate or modify the appellant's confirmed Chapter 13 plan.

The trial court held the United States' argument that the plan had not been filed in "good faith" was untimely in that the "Loan Servicing Center for the United States had received notice of the confirmation hearing on December 16, 1985." Thus, the trial court denied the United States' motion to modify the plan. However, the trial court did find that the complaint to determine the dischargeability of the HEAL Loan could be brought at any time pursuant to Bankruptcy Rule 4007(b).[3] Additionally, the trial court determined:

> [42 U.S.C.] [§] 294f(g) is an absolute prohibition against discharge of the loan in question prior to expiration of the five year period commencing with the first date repayment begins. After the five year period expires, the loan may be discharged upon a finding by the Bankrupt-

cy Court that nondischarge would be unconscionable. *In re Hampton*, 47 B.R. 47, 49 (Bankr.N.D.Ill.1985).

64 B.R. at 812.

In following *Matter of Johnson*, 787 F.2d 1179 (7th Cir.1986), the court below held that "the dischargeability of HEAL Loans is not governed by § 523 or § 1328 but rather by 42 U.S.C. § 294f(g)" and consequently "the debtor's HEAL obligation is not dischargeable within a Chapter 13 case."[4] *In re Cleveland*, 64 B.R. at 812. Pursuant to the above reasoning, and because "the five year period required for discharge had not expired" the court below granted the United States' motion for summary judgment. *In re Cleveland*, 64 B.R. at 813. Additionally, the trial court ruled that because the plan had been confirmed without objection, the United States was bound by the payments under the confirmed plan "until the debtor obtains his discharge, at which time the debtor will be obligated to pay off the nondischarged remainder of the HEAL loan." *Id.*

## DISCUSSION

The essence of the debtor's argument is that although section 294f(g) makes specific reference to discharges in bankruptcy *"under Title 11,"* the Congressional intent was not to limit the super discharge available under section 1328(a). In support of this argument the debtor relies exclusively on the extensive opinion of *In re Lee*, 71 B.R. 833 (Bankr.N.D.Ga.1987).[5]

---

**2.** The plan provided for an 18% repayment to unsecured creditors over a 60 month life of the plan.

**3.** Bankruptcy Rule 4007(b) provides:

> (b) *Time for Commencing Proceeding Other Than Under § 523(c) of the Code.* A complaint other than under § 523(c) may be filed at any time. A case may be reopened without payment of an additional filing fee for the purpose of filing a complaint to obtain a determination under this rule.

**4.** 42 U.S.C. § 294f(g) was enacted in 1981 as part of the Omnibus Budget Reconciliation Act of 1981 and provides as follows:

> (g) A debt which is a loan insured under the authority of this subpart *may be released by a*

*discharge in bankruptcy under Title 11 only if* such discharge is granted—

> (1) after the expiration of the 5-year period beginning on the first date, ... when repayment of such loan is required;
> (2) upon a finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable; *and*
> (3) upon the condition that the Secretary shall not have waived the Secretary's rights to apply subsection (f) of this section to the borrower and the discharged debt.

42 U.S.C. § 294f(g) (1987) (emphasis added).

**5.** The Bankruptcy Court in *In re Lee*, began its analysis by recognizing the important distinction between the general discharge in § 1328(a) (allowing the discharge of all but certain long

In response to the debtor's reliance on *In re Lee*, HHS points out that *In re Lee*, has subsequently been reversed by the District Court for the Northern District of Georgia in an unpublished memorandum decision.[6]

In reconciling between two different but applicable statutes, several rules of statutory interpretation have been established. In determining the Congressional intent behind the enactment of each statute, the starting point is the language of the statute itself. *Watt v. Alaska*, 451 U.S. 259, 265, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981). However, "[t]he circumstances of the enactment of particular legislation may persuade a court that Congress did not intend words of common meaning to have their literal effect." *Id.* at 266, 101 S.Ct. at 1678 (citations omitted). Additionally, courts "must read the statutes to *give effect to each* if [they] can do so while *preserving their sense and purpose.*" *Id.* at 267, 101 S.Ct. at 1678 (emphasis supplied) (citations omitted).

In applying the above doctrines to § 294f(g), the language itself appears to make the section applicable to all discharges "under Title 11," which would include the super discharge under § 1328(a). However, as the *Lee* court pointed out, the reference to discharges "under Title 11" may be ambiguous in view of the fact that the legislative history in 42 U.S.C. § 294f(g) does not indicate any intention by Congress to amend the recognized concept that student loans are generally dischargeable under § 1328(a). Indeed there is no legislative discussion concerning the intended effect of § 294f(g) in the bankruptcy context. Recognizing such an exception to the § 1328(a) discharge through a completely separate statute would, as the *Lee* court recognized, be a "significant departure from existing bankruptcy law" and would amount to a *modification* of § 1328(a) by *implication.*

On the other hand, the *Johnson* court's rationale for recognizing the exception was that "[i]n reenacting section 294f(g), Congress was presumably aware of section 1328(a)'s more general discharge provision and other previously enacted provisions of the Bankruptcy Code dealing with the discharge of educational loans." *Matter of Johnson*, 787 F.2d at 1182.

Additional considerations are that two separate attempts to pass amendments to § 1328(a) failed. (The proposed amendments would have made all § 523(a) debts nondischargeable in Chapter 13's). One of the bills was proposed during the same year that § 294f(g) was enacted. Thus, an inference may exist that Congress would not have intended to modify § 1328(a) through the enactment of § 294f(g) without some indication of that intent in the legislative history. Also, for mere policy reasons, it may be arguable that Congress would not have intended to hold certain student loans nondischargeable, while still allowing debts arising out of *fraud* (§ 523(a)(4)), *willful and malicious injury* (§ 523(a)(6)),

---

term debts and alimony and child support obligations), with the hardship discharge of § 1329(b) (which is subject to all the discharge exceptions under § 523(a) including student loan debts). The *Lee* court also determined that the specific reference in § 294f(g) as pertaining to discharges "under Title 11" was ambiguous. Additionally, the court concluded that recognizing an exception to the § 1328(a) discharge through a completely separate statute would be a "significant departure from existing bankruptcy law" and would amount to a *modification* of § 1328(a) by *implication.* The *Lee* court then embarked on an extensive analysis of the legislative history of § 1328(a), while also pointing out the lack of any legislative discussion concerning the intended effect of § 294f(g) in the bankruptcy context. Finally, the *Lee* court held that "the literal interpretation of the term 'Title 11' should not prevail in this instance because it would create a result contrary to the intentions of Congress." *Lee*, 71 B.R. at 849. The *Lee* court stated that "[a] contrary interpretation would *sharply alter existing law without explanation by Congress." Id.* (emphasis added).

**6.** The District Court opinion relies on the Seventh Circuit analysis in *Matter of Johnson*, that § 294f(g) is "more specific" as well as "later in time" than § 1328(a). Therefore, the Seventh Circuit concludes, § 294f(g) takes precedence over § 1328(a) and is a limited exception to the "super discharge" under Chapter 13. *Matter of Johnson*, 787 F.2d at 1181–82. *See also In re Hampton*, 47 B.R. 47, 50 (Bankr.N.D.Ill.1985) (*Chapter 7* case); *In re Hines*, 63 B.R. 731, 734–35 (Bankr.D.S.D.1986) (*Chapter 7* case); *In re Gronski*, 65 B.R. 932 (Bankr.E.D.Pa.1986) (*Chapter 13* case).

or *criminal fines* (§ 523(a)(7)), to remain dischargeable under § 1328(a).

Although the above arguments are both persuasive, this Panel finds that a dispute in this case on the applicability of the statutes involved is unnecessary. As previously set forth, the clear language of 42 U.S.C. § 294f(g) provides that HEAL Loans are *dischargeable if*: (1) *the discharge is not granted until after the expiration of the 5-year period from the date when payments first become due;* (2) *after* the 5-year period the Bankruptcy Court determines that the nondischarge of such debt would be *unconscionable; and* (3) there are no set off rights against Federal payments to *"borrowers practicing their professions."* 42 U.S.C. §§ 294f(f)–(g). [7]

The obvious rationale for the allowance of discharge under the above circumstances is that HEAL borrowers generally enter lucrative careers in the health care profession, however, in some circumstances (as in the instant case) a HEAL borrower who is not able to complete his health care education never obtains the financial benefits from such education. Thus, Congress determined that in the limited exception of HEAL Loans, *a determination as to the dischargeability of the loan should wait until 5-years had passed* from the date payments first became due, thereby providing a better opportunity to take into consideration subsequent events and make a final determination as to the "conscionability" of allowing the HEAL borrower to be discharged from the debt.

The bankruptcy court determined that pursuant to Bankruptcy Rule 4007(b), "a complaint to determine the dischargeability of a HEAL loan may be filed at *any time*

before the discharge is granted." 64 B.R. at 812. However, the clear language of 42 U.S.C. § 294f(g) requires that *a determination of discharge regarding a HEAL loan not occur until "after the expiration of the 5-year period...."* 42 U.S.C. § 294f(g) (emphasis added). Given this specific statutory language, this Panel holds that the instant complaint to determine the dischargeability of the debtor's HEAL loan was *premature* and should have been dismissed.

■ This holding is also supported by the important public policy of judicial economy. It was unnecessary to hold a dischargeability hearing with regard to the HEAL loan in the instant case, when such discharge *cannot be finally determined* until the year 1990 (after the passing of the statutory 5-year requirement). Although the bankruptcy court recognized this aspect of § 294f(g), it determined that Bankruptcy Rule 4007 allowed the dischargeability complaint to be brought at any time. It is well recognized, however, that the Bankruptcy Rules are not to be construed so as to modify specific statutory rights or procedures. Additionally, Bankruptcy Rule 1001 requires that the Rules "be construed to secure the just, speedy, and inexpensive determination of every case and proceeding."

In light of these important principles, this Panel finds that the underlying complaint in the instant case was *premature* and the dischargeability of the debtor's HEAL loan should not be considered until the statutory period under 42 U.S.C. § 294f(g) has passed.

■ By allowing a HEAL loan to be ruled nondischargeable at the outset of a

---

**7.** In recognizing the dischargeability of a HEAL loan the Federal District Court of Georgia in reversing the bankruptcy court by an unpublished decision, stated:

A Chapter 13 debtor who completes a confirmed plan which includes a HEAL loan will most likely be able to obtain a discharge under the requirements of § 294f(g). Since most Chapter 13 plans are three years in length, and often are five years in length, the first requirement of § 294f(g) will usually be met at the conclusion of the plan. Also, if the plan was originated and maintained in "good

faith" as required by 11 U.S.C. § 1325(a)(3), the debtor will most likely be able to show that nondischarge of the HEAL loan would be "unconscionable." For those debtors whose income has dramatically increased during the pendency of the Chapter 13 plan, a wide sweeping "fresh start" is not necessary and repayment of the HEAL loan would be conscionable. Thus application of 294f(g) to discharge under § 1328(a) would not contravene the policy of § 1328(a) and it would further the policy of § 294f(g).

Chapter 13 case, a debtor would be required to make the *full loan payment* until after the statutory 5–year period has passed. In many cases, such a loan payment would be extremely burdensome and may completely eliminate any chance for payment to other unsecured creditors.[8] This would be contrary to the congressional intent of encouraging debtors to use Chapter 13 reorganization rather than liquidating under Chapter 7. Additionally, an "honest" debtor may be unable to "enter a lucrative health care profession," and may merely be able to maintain his or her status quo from the time a Chapter 13 petition is filed. Under such circumstances, § 294f(g) clearly allows for the discharge of the HEAL loan and the debtor should not be subject to burdensome loan payments while at the same time limiting the recovery of other unsecured creditors.

Under this Panel's holding in this case, a HEAL loan would be treated as any other unsecured debt and receive the same pro rata payment under a Chapter 13 plan as other unsecured creditors. Then, after the statutory 5–year period has passed, the bankruptcy court can make a determination under § 294f(g) as to whether "nondischarge of such debt would be unconscionable." 42 U.S.C. § 294f(g)(2). If it is determined that the debtor should not be allowed a discharge under § 294f(g), then SLMA can seek to modify the plan to provide for payment of the loan pursuant to the terms of the loan. If on the other hand, nondischarge of the loan would be unconscionable, SLMA would have been paid its pro rata share as all other unsecured creditors.

We hold that such a ruling best "preserves the sense and purpose" of both the Bankruptcy Code and 42 U.S.C. § 294f(g). *Watt v. Alaska,* 451 U.S. at 267, 101 S.Ct. at 1678. Accordingly, the order of the bankruptcy court is REVERSED.

8. In the instant case, however, SLMA is bound by the plan's terms for payment as an unsecured creditor because of its failure to object to the plan or file a nondischargeability complaint.