**In re Jon C. WARDLOW and Renette E. Wardlow, Debtors.**

**Jon C. WARDLOW and Renette E. Wardlow, Plaintiffs,**

**v.**

**GREAT LAKES HIGHER EDUCATION CORPORATION, Defendant.**

**Bankruptcy No. 93–30123.**
**Adv. No. 93–3012.**

United States Bankruptcy Court,
W.D. Missouri.

Dec. 27, 1993.

W. Henry Johnson, Douglas, Douglas, Johnson & Wood, Neosho, MO, for plaintiffs/debtors.

Lloyd Blaney, Madison, WI, for defendant.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

This is an adversary proceeding to determine the dischargeability of certain student loans incurred by debtors between 1981 and 1986. This is a core proceeding under 28

U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, I find that the debts due from Jon C. Wardlow to defendant are dischargeable as first coming due more than seven years prior to the filing of the petition. I further find that the debts of Renette E. Wardlow to defendant are nondischargeable. 11 U.S.C. § 523(a)(8)(A) and (B).

## FACTUAL BACKGROUND

All parties agreed that this proceeding would be decided by the Stipulation of Facts and Trial Briefs. Accordingly, I base my factual findings on debtors' bankruptcy schedules, the Complaint and defendant's response, the Trial Briefs, and the Stipulation of Facts.

Debtors are currently married and in their early thirties. Prior to this marriage, both Jon and Renette Wardlow attended the University of Wisconsin from 1980 through 1981. John Wardlow then attended the University of Arkansas from 1982 through 1984, graduating with a Bachelor of Science in Psychology. Renette attended the University of Arkansas from 1982 through 1986, graduating with a Master's degree in Human Development and Family Studies. While at those universities, Jon Wardlow executed certain promissory notes evidencing student loans. Defendant, Great Lakes Higher Education Corporation ("Great Lakes"), a Wisconsin corporation which guaranteed Mr. Wardlow's student loans, was owed $10,634.98 as of June 30, 1993. Mr. Wardlow made payments totaling $4,554.71 on his original obligation of $11,000 between May 23, 1987, and April 16, 1992.

Renette Wardlow also executed certain promissory notes evidencing student loans guaranteed by Great Lakes. She is indebted to defendant in the amount of $25,586.43 as of June 30, 1993. While the parties agree Mrs. Wardlow made some effort to repay her original obligation of $24,000, her loans were only in repayment status for eighteen months due to deferment or forbearance.[1]

---

1. Debtors submitted copies of thirteen canceled checks made payable to Student Loan Servicing

Great Lakes is the current owner and holder of the promissory notes, and it has reimbursed the original lender, as required by its legal obligation as guarantor.

Debtors are both currently employed, earning a net monthly income of $2,830.00 and incurring total monthly expenses of $2,893.50. They have two children, five and two years old. Jon Wardlow is presently employed as a shop foreman with a net income of $1,215.00. He has been unable to find long term employment in the field of psychology. Renette Wardlow is employed by the University of Missouri Extension Office with a net income of $1,691.21. She is using her degree in child development and family relations in her employment.

This Chapter 7 case was filed on March 25, 1993. Debtors brought this action to determine the dischargeability of these student loans on June 9, 1993, claiming that the loans first became due more than seven years prior to the filing of debtors' petition for relief under Chapter 7 of the Bankruptcy Code ("Code"), or, alternatively, that excepting such debts from discharge would impose an undue hardship on debtors and their dependents.

### DISCUSSION

 Initially, I will deal with debtors' claim that the loans should be discharged because they are more than seven years old. Debtors plead in their complaint that their student loan debts first became due more than seven years before the filing of the bankruptcy petition.[2] The burden of proof is on the creditor to prove when the debt was due or if there has been any suspension of the payment period. *Connecticut Student Loan Foundation v. Keenan (In re Keenan)*, 53 B.R. 913, 916 (Bankr.D.Conn.1985). If

the first payment date is deferred, or if a loan is consolidated with a later loan, the start of the seven year period is delayed. *United States v. McGrath,* 143 B.R. 820, 824 (D.Md.1992) *aff'd* 8 F.3d 821 (4th Cir.1993) (Table); 3 Lawrence P. King et al., *Collier on Bankruptcy,* ¶ 523.18 at 523–151–52 n. 5c (15th ed. 1993) *citing Pennsylvania Higher Education Assistance Agency v. Kaufman (In re Kaufman),* 9 B.R. 755, 758 (Bankr. E.D.Pa.1981). However, there is no evidence of any such consolidation or deferment. Therefore, I must assume that the notes submitted as evidence became due according to their terms.

As to Jon C. Wardlow, he graduated from the University of Arkansas in 1984. By the terms of his promissory notes, his student loans became due nine months after graduation. *See* Pl.Exh. #11. The loans were due and payable in September of 1985, at the latest. Debtors' bankruptcy was filed on March 25, 1993, therefore, the loans first came due more than seven years prior to the filing of the bankruptcy petition and are dischargeable pursuant to 11 U.S.C. § 535(a)(8)(A).

As to Renette E. Wardlow, the Stipulation of Facts states that she attended the University of Arkansas from 1982 through 1986, receiving both a Bachelor of Science and Masters Degree in Human Development and Family Studies. By the terms of her promissory notes, her student loans became due nine months after graduation, or after she ceased carrying at least one-half the normal academic work-load. *See* Pl.Exh. # 12. Based upon the Stipulation of Facts and the terms of the promissory notes, Renette's student loans first became due in September of 1987. Since the bankruptcy petition was filed on March 25, 1993, Renette's loans in the sum of $25,586.43 first came due within

---

Center and signed by Renette E. Wardlow. The earliest check was written on July 15, 1987, and the latest check was written on December 28, 1990. These checks total $1,564.32.

**2.** Section 523(a)(8)(A) provides that:
 (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

 . . . . .

 (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any pro-

gram funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—
 (A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition;
11 U.S.C. § 523(a)(8)(A).

seven years of the bankruptcy. Thus, Section 523(a)(8)(A) does not discharge those obligations.

■ Finding that Renette E. Wardlow's student loans are not dischargeable pursuant to 11 U.S.C. § 523(a)(8)(A), she asks me to find that failing to discharge the student loan obligations would impose an undue hardship on debtors. The Code provides that a student loan obligation may be discharged in a debtor's Chapter 7 bankruptcy case if "[e]xcepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8)(B). There is no definition of undue hardship in the Code, therefore, it is in the discretion of the bankruptcy court to determine if the facts of a particular case warrant a finding of dischargeability of the debt. *In re Ipsen,* 149 B.R. 583, 585 (Bankr. W.D.Mo.1992); *In re Johnson,* 121 B.R. 91, 93 (Bankr.N.D.Okla.1990). This Court has adopted the standard for undue hardship set out in *Brunner v. New York State Higher Education Services, Corp.,* 831 F.2d 395 (2nd Cir.1987), which requires the following three-part showing:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
> (3) that the debtor has made good faith efforts to repay the loans.

*Id.* at 396. The burden is on the debtors to prove that their circumstances warrant discharge of their student loans. *In re Roberson,* 999 F.2d 1132, 1136 (7th Cir.1993). In making this determination, I look at the income and expenses of both debtors. *In re Velis,* 123 B.R. 497, 512 (D.N.J.1991). I find that Mrs. Wardlow has failed to demonstrate that, based on current income and expenses, she cannot maintain a minimal standard of living for herself and her dependents if forced to repay the loans. First, I find it significant that Mrs. Wardlow obtained and retains a job commensurate with the skills she received as a result of the education she received through the student loans. I also find it significant that Mr. Wardlow was forced to relinquish a better paying job when the family moved from Neosho, Missouri to Springfield, Missouri in order for Mrs. Wardlow to pursue her career. I have to assume the family determined this move would be in their best interest and that Mr. Wardlow would eventually find employment at a salary comparable to the salary he was receiving in Neosho, Missouri. Debtors submitted an estimate of living expenses as of September 23, 1993. In addition to food, clothing, shelter, and transportation expenses, debtors list the following expenses: telephone expense of $100.00 per month; cable television expense of $36.50 per month; recreation expense of $75.00 per month; and miscellaneous expense of $75.00 per month. I find that debtors are maintaining more than a minimal standard of living for themselves and their dependents. I, therefore, find that Mrs. Wardlow is unable to satisfy the first prong of the *Brunner* test.

The second prong of the *Brunner* test requires the debtors to demonstrate that additional circumstances exist which make it likely that the inability to maintain a minimal standard of living will exist for a significant portion of the repayment period. Debtors claim that both of their children suffer from ear infections requiring treatment with antibiotics. Since both children are allergic to standard antibiotics, the treatment of these infections necessitates the purchase of more expensive medication. In addition, Mrs. Wardlow suffers from anxiety attacks and stress related problems which have required hospitalization.[3] She continues to require therapy and medication for this condition. Debtors' medical insurance covers fifty percent of Mrs. Wardlow's medical and medication expenses. Debtors also argue that because they both work long hours, they will incur expenses for day care even when both children attend school all day. Those expenses are now $375.00 per month. Also, they argue that Mrs. Wardlow's medical condition is not likely to improve. First, I note that if debtors are unable to satisfy the first prong of the *Brunner* test, the debt is non-

---

**3.** Mrs. Wardlow was hospitalized for twenty-six days in 1990 for stress and depression. She was hospitalized for approximately ten days in 1991, for the same condition.

dischargeable. *Brunner,* at 396. Second, debtors offered no evidence that the children's condition is other than the usual childhood sicknesses that the children should outgrow long before the repayment period is past. Further, debtors' child care expenses will surely decrease, even if they are not eliminated, when both children are in school for a majority of the school day. Finally, debtors offered no proof of the severity of Mrs. Wardlow's medical condition. Mrs. Wardlow is sufficiently healthy to perform her job, and offered no indication she would be unable to perform in the future. Therefore, I find there are no additional circumstances indicating a likelihood that debtors will be unable to repay their student loans for a significant portion of the repayment period. *Id.*[4]

Finally, as to the good faith test, Mrs. Wardlow has made payments totaling $1,564.32. I need not reach the issue of whether this in fact indicates a good faith effort to repay the obligations, as Mrs. Wardlow has failed to satisfy either of the other two prongs. For all the above reasons, I find that Mrs. Wardlow has not proven that a failure to discharge her student loan obligations would impose an undue hardship on her or her dependents. As such, the debt is nondischargeable.

■ Defendant indicates that, while the loans should be nondischargeable, it would not be opposed to reducing debtors' monthly payments. However, defendant reads the Higher Education Act of 1965 to bar it from entering into any agreement which would result in the repayment period being extended beyond ten years.[5] Great Lakes, therefore, invites this Court to not only find the debt nondischargeable, but to also create a new payment schedule which is longer than that it believes is allowed by the Higher Education Act, and to impose that schedule on the parties. In a recent case, the Seventh Circuit Court of Appeals reversed the District Court and reinstated a bankruptcy court decision which found a student loan obligation nondischargeable, but deferred payment for two years to enable debtor to find employment. *In re Roberson,* 999 F.2d 1132, 1137–38 (7th Cir.1993). Despite *Roberson,* I decline defendant's invitation to assume for this Court the role of restructuring student loan obligations.[6]

Congress granted this Court the authority only to determine the dischargeability or the nondischargeability of a student loan debt in a Chapter 7 case. If the Court determines there is undue hardship, or that the loan first became due more than seven years prior to the bankruptcy, the loan is discharged. Absent such a finding, student loans are excepted from discharge. *See* 11 U.S.C. § 523(a)(8) and 523(a)(8)(B). By contrast, when a debtor files a bankruptcy petition under Chapter 13 of the Code, the debtor proposes a plan for

---

4. While not necessary to my decision, I note that as a result of this Chapter 7 case debtors are discharging in excess of $35,000 in credit card and consumer debt, plus a portion of their student loan debt, plus an approximately $33,000 deficiency due on a mortgage on a former residence. Assuming the debtors can avoid the credit card trap, they are in a much better position to pay Mrs. Wardlow's student loans than they were before the Chapter 7 case was filed.

5. Educational loans are generally repaid over a ten year period. *Bey v. Dollar Savings Bank (In re Bey),* 95 B.R. 376, 378 (Bankr.W.D.Pa.1989). The same is true in this case. Pl.Exh. 11(B).
Section 427 of the Higher Education Act of 1965 provides in relevant part:
**(a) List of Requirements**
Except as provided in section 1078–3 of this title, a loan by an eligible lender shall be insurable by the Secretary under the provisions of this part only if—
(2) evidenced by a note or other written agreement which—

(B) provides for repayment (except as provided in sub-section (c) of this section) of the principal amount of the loan in installments over a period of not less than 5 years ... nor more than 10 years beginning 6 months after the month in which the student ceases to carry at an eligible institution at least one-half the normal full-time academic workload as determined by the institution ...
20 U.S.C. § 1077(a)(2)(B).

6. I concur with the Honorable Eugene A. Wright who held in a concurring opinion that:
We recognize that Congress has established a ten-year repayment period for student loans.... To the extent the discharge of student loans within five years under § 523(a)(8)(B) conflicts with this prescribed repayment period, the burden to alter either statute, or both, is upon the Congress, not this court.
*Nunn v. State of Washington (In re Nunn),* 788 F.2d 617, 619 (9th Cir.1986).

the payment of debts over a period of at least three but no more than five years. 11 U.S.C. § 1322(c). Safeguards are built into the Chapter 13 system to insure fair treatment of all creditors and oversight by a trustee. If bankruptcy courts begin restructuring student loan obligations, the effect will be to transform Chapter 7 cases into Chapter 13 cases, with payment periods of up to ten years, and without those safeguards. And, presumably, as in Chapter 13 cases, the debtor would often be back in Court asking for plan revisions based on changed circumstances. 11 U.S.C. § 1329(a). In any event, I find that Congress did not intend bankruptcy courts to restructure student loans in Chapter 7 cases but only to determine their dischargeability.[7] Nothing herein is intended to affect the ability of Great Lakes to agree to restructure Mrs. Wardlow's obligations, to the extent allowable by the Higher Education Act.

An Order in accordance with this Memorandum Opinion will be entered this date.

---

**7.** There is yet another unresolved issue raised by *Roberson*. Does the deferment of loan payments for two years toll the requirement in section 523(a)(8)(A) that student loans are dischargeable if first due more than seven years before the filing of the petition? Further, if I were to restructure debtors' student loans, would this be in effect a consolidation, which means the loans then first become due at the date this Court ordered debtors to make a payment? I need not resolve this issue as I find that the Code does not allow me to restructure student loan debt in Chapter 7.