**In re Christopher Harry TAYLOR and Tina Rene Taylor, Debtors.**

**UNITED STUDENT AID FUNDS INC.; State of Alaska; Commission On Postsecondary Education, and Student Loan Corporation, Appellants,**

**v.**

**Christopher Harry TAYLOR and Tina Rene Taylor, Appellees.**

BAP Nos. WW–97–1385–RyRuR, WW–97–1386.
Bankruptcy No. 95–09922.
Adversary No. 96–05138.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on July 24, 1998.

Aug. 12, 1998.

748

Teresa Williams, Office of the Attorney General, Anchorage, AK, for Alaska Commission on Secondary Education.

Jennifer Burkhardt, Karr, Tuttle & Campbell, Seattle, WA, for United Student Aid Funds, Inc.

Raymond Hoffer, Mauher & Bell, Seguim, WA, for Christopher and Tina Taylor.

Before RYAN, D. RUSSELL,[1] and B. RUSSELL, Bankruptcy Judges.

### *OPINION*

RYAN, Bankruptcy Judge.

Debtors Christopher and Tina Taylor ("Appellees") filed a complaint (the "Complaint") to discharge Christopher's student loan debt (the "Student Loan") on the basis of undue hardship. Subsequently, United Student Aid Funds, Inc. ("USA Funds") filed a motion to dismiss (the "Motion to Dismiss") the Complaint as premature. The bankruptcy court entered an order denying the Motion to Dismiss (the "Dismissal Order").

Subsequently, trial commenced on the Complaint and the bankruptcy court entered an order granting Appellees a partial discharge of the Student Loan (the "Discharge Order").

USA Funds appealed the Dismissal and Discharge Orders, and Alaska Student Loan Corporation ("ASLC") appealed the Discharge Order. Later, USA Funds and ASLC (collectively, "Appellants") consolidated their appeals. We AFFIRM in part, and VACATE and REMAND in part.

## I. FACTS

In October 1984, Christopher enrolled at Emery Riddle University ("Emery"). From 1984 to 1988, Christopher borrowed $27,500 from ASLC and $31,669 from different lenders, whose loans were later consolidated and guaranteed by USA Funds. Under the terms of the promissory notes, Christopher had a twelve-month grace period, beginning upon the cessation of enrollment, before his payments became due.

On June 28, 1988, Christopher failed to enroll at Emery. His first payment of $295 became due on July 1, 1989. In September, Christopher made a payment of $50 to ASLC. In December, he made another payment of $25 to ASLC.

Thereafter, returning to Emery, Christopher obtained a deferment of the Student Loan payments from January 1990 through August 15, 1990. He graduated and was granted an additional six-month grace period before having to repay the Student Loan.

On April 1, 1991, Christopher's obligation to repay the Student Loan recommenced. Other than the two payments totaling $75, he did not make another payment until August 1996.

In March 1991, Appellees signed an agreement (the "Agreement") with Consumer Credit Counseling to repay their debts with the exception of the Student Loan. The Agreement provided for full payment of Appellees' debt for a 1990 Toyota pickup truck and a 1991 Ford Escort.

After six months of payments pursuant to the Agreement, Appellees filed a chapter 13 petition. In February 1995, the chapter 13 case was dismissed.

On November 13, 1995, Appellees filed another chapter 13 petition. On February 26, 1996, Appellees filed their chapter 13 plan (the "Plan"). On July 25, 1996, the Plan was confirmed.

On May 2, 1996, Appellees filed the Complaint pursuant to Bankruptcy Code (the "Code")[2] § 523(a)(8)(B)[3] to discharge the Student Loan because of undue hardship. Appellees sought to discharge the $50,440.90

1. Hon. David E. Russell, Chief Bankruptcy Judge for Eastern District of California, sitting by designation.

2. The Code is set forth in 11 U.S.C. §§ 101–1330 (1998).

3. Section 523(a)(8) provides:
   (a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
   . . . .
   (8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless—
   (A) such loan, benefit, scholarship, or stipend overpayment first became due before more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or
   (B) excepting such debt from discharge under this paragraph will impose an *undue hardship* on the debtor and the debtor's dependents.
   11 U.S.C. § 523(a)(8) (emphasis added).

owed to USA Funds and the $35,748 .88 owed to ASLC.

On June 6, 1996, USA Funds filed the Motion to Dismiss asserting that the Complaint was premature because payments under the Plan had not been completed. On August 5, 1996, the bankruptcy court entered the Dismissal Order.

On April 8, 1997, the nondischargeability trial began, and Appellees' counsel objected to the relevancy of Appellees' alleged bad faith effort to repay the Student Loan. The bankruptcy court sustained the objection.

At the conclusion of the trial, the bankruptcy court granted Appellees a partial discharge of the Student Loan based on a seven-year payment schedule.[4] The Student Loan payments were scheduled to commence on April 1, 1997 and continue until 2004, even though the Plan payments were to cease on December 13, 1998. According to the payment schedule, Appellees were required to make total payments of $29,550, including $13,002 to ASLC and $16,548 to USA Funds. Consequently, the bankruptcy court discharged approximately 67% of the ASLC loan and 70% of the USA Funds loan.[5]

On May 14, 1997, USA Funds filed a timely notice of appeal of the Dismissal and Discharge Orders. On the same day, ASLC filed its notice of appeal of the Discharge Order. The USA Funds and ASLC's appeals were then consolidated.

## II. ISSUES ON APPEAL

1. Whether the bankruptcy court erred by failing to dismiss the Complaint as premature and not ripe for adjudication.

2. Whether the bankruptcy court erred by partially discharging the Student Loan.

3. Whether the bankruptcy court erred by failing to consider whether Appellees attempted to make a good faith effort to repay the Student Loan.

4. Appellants do not challenge the length of repayment pursuant to the Discharge Order.

## III. STANDARD OF REVIEW

■ Whether a claim is ripe for adjudication is a question of law that we review de novo. *See Christensen v. Yolo County Bd. of Supervisors*, 995 F.2d 161, 162 (9th Cir.1993) (citing *Southern Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir.1990), *cert. denied*, 502 U.S. 943, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991); *Herrington v. County of Sonoma*, 857 F.2d 567, 568 (9th Cir.1988), *cert. denied*, 489 U.S. 1090, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989)).

■ Similarly, whether a student loan debt is dischargeable on the basis of undue hardship is a question of law that we review de novo. *See United Student Aid Funds, Inc. v. Pena (In re Pena)*, 207 B.R. 919, 920 (9th Cir. BAP 1997) (citing *Tully v. Taxel (In re Tully)*, 202 B.R. 481, 483 (9th Cir. BAP 1996)); *Dolph v. Pennsylvania Higher Educ., Assistance Agency*, 215 B.R. 832, 834 (6th Cir. BAP 1998). Additionally, the bankruptcy court's interpretation of the Code is a question of law that we review de novo. *See Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee)*, 218 B.R. 916, 919 (9th Cir. BAP 1998).

■ Finally, we review the bankruptcy court's application of a legal standard de novo. *See Pena*, 207 B.R. at 920.

## IV. DISCUSSION

A. *The Complaint Was Ripe For Adjudication.*

Appellants argue that the issue of dischargeability was not ripe for adjudication until Plan completion because circumstances regarding Appellees' financial condition could change during the Plan period that would show an ability to pay the Student Loan. Additionally, Appellants contend that § 1328(a) dictates that a debt should not be discharged until after completion of plan payments.

■ Although a chapter 13 debtor is generally not entitled to a discharge of debts

5. The percentages are calculated based upon the outstanding principle plus interest at eight percent.

until after completion of payments under a plan, student loans are specifically excepted from a § 1328 discharge. *See* 11 U.S.C. § 1328(a)(2).[6] *See also Strauss v. Student Loan Office–Mercer (In re Strauss)*, 216 B.R. 638, 640 (Bankr.N.D.Cal.1998). However, within the § 523(a)(8) exception to discharge is an exception to nondischargeability of a student loan if repayment creates an undue hardship for the debtor. *See* 11 U.S.C. § 523(a)(8). Under Federal Rule of Bankruptcy Procedure ("FRBP") 4007(b), a § 523(a)(8)(B) action can be brought at any time. *See* FED.R.BANKR.P. 4007(b).

Appellants rely on *Superior Court v. Heincy (In re Heincy)*, 858 F.2d 548 (9th Cir. 1988), for their ripeness argument. The bankruptcy court in *Heincy* held that the "dischargeability issue [was] not ripe for resolution until ... [the debtor] ... successfully completed payments under the plan." *Id.* at 550. However, *Heincy* is distinguishable. In *Heincy*, the debt was for criminal restitution. *Id.* at 549.[7] Such a debt is dischargeable in a chapter 13 upon completion of the plan payments. *Id.* at 550. *See also* 11 U.S.C. § 1328(a). However, student loans are excepted from a § 1328 discharge. *See* 11 U.S.C. § 1328(a)(2). Therefore, *Heincy* does not support Appellants' position.

Appellants also cite *United States v. Cleveland (In re Cleveland)*, 89 B.R. 69, 72 (9th Cir. BAP 1988), for support. However, *Cleveland* is also distinguishable. *Cleveland* involved a debtor's attempt to discharge a Health Education Assistance Loan ("HEAL") governed by 42 U.S.C. § 292f(g).[8] Pursuant to § 292f(g), HEAL loans cannot be discharged until "after the expiration of the seven-year period beginning on the first date when repayment of such loan is required...." 42 U.S.C. § 292f(g). In *Cleveland*, we held that the complaint was "premature" because the clear language of § 292f(g) prohibited a discharge until the expiration of the § 292f(g) waiting period. *Cleveland*, 89 B.R. at 72. *See also Student Loan Mktg. Ass'n v. Zierden–Landmesser (In re Zierden–Landmesser)*, 214 B.R. 300, 301 (Bankr. M.D.Pa.1997) (stating that debtors seeking to discharge a HEAL loan must wait for seven years before filing for a discharge based on unconscionability).

On the other hand, student loans can be discharged pursuant to § 523(a)(8) if the petition is filed seven years after the loan first became due or repayment will cause a debtor undue hardship. *See* 11 U.S.C. § 523(a)(8). The filing of a complaint at any time to discharge a student loan based on undue hardship does not conflict with any statutory right or procedure or with public policy. Furthermore, FRBP 4007(b) expressly permits the filing of a § 523(a)(8) complaint at any time.[9] *See* FED.R.BANKR.P. 4007(b).

6. Section 1328(a)(2) provides:

> (a) As soon as practicable *after completion* by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title *except any debt —*
>
> ....
>
> (2) of the kind specified in paragraph (5), (8), or (9) of section 523(a) of this title....

11 U.S.C. § 1328(a)(2) (emphasis added).

7. *See also Commonwealth of Pa. Dep't of Pub. Welfare v. Johnson–Allen (In re Johnson–Allen)*, 871 F.2d 421, 423 (3rd Cir.1989) (holding that the issue of dischargeability of a criminal restitution obligation is not ripe until after completion of the plan payments); *Everett C. Turner Realtors v. Carroll (In re Carroll)*, 61 B.R. 178, 179 (Bankr.D.Or.1986) (same).

8. Section 292f(g), formerly § 294f(g), provides:

> (g) Conditions for discharge of debt in bankruptcy
>
> A debt which is a loan insured under the authority of this subpart may be released by a discharge in bankruptcy under any chapter of Title 11, only if such discharge is granted—
> (1) after the expiration of the seven-year period beginning on the first date when repayment of such loan is required, exclusive of any period after such date in which the obligation to pay installments on the loan is suspended;
> (2) upon finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable; *and*
> (3) upon the condition that the Secretary shall not have waived the Secretary's rights to apply subsection (f) of this section to the borrower and the discharged debt.

42 U.S.C. § 292f(g) (1998) (emphasis added).

9. *See also Goranson v. Pennsylvania Higher Educ. Assistance Agency (In re Goranson)*, 183 B.R. 52, 53 n. 1 (Bankr.W.D.N.Y.1995) (stating in a footnote that undue hardship can be addressed before completion of the plan).

Accordingly, Appellees had the right to file the Complaint when they did, and the issues were ripe for adjudication at that time.

### B. The Bankruptcy Court Erred By Partially Discharging The Student Loan.

Appellants argue that the bankruptcy court erred in granting Appellees a partial discharge of the Student Loan. They assert that nothing in § 523(a)(8) allows the bankruptcy courts to partially discharge or modify the terms of the Student Loan.

Appellees respond that § 1322(b)(2) [10] authorizes the modification of student loan debts in a chapter 13 plan. Consequently, Appellees assert that the partial dischargeability of the Student Loan was a valid modification under § 1322(b)(2). We disagree.

Generally, with the exception of a mortgage on a primary residence, bankruptcy courts may modify both secured and unsecured debts. See 11 U.S.C. § 1322(b)(2); Lomas Mortgage USA v. Wiese, 980 F.2d 1279, 1281–82 (9th Cir.1992). However, § 1322(b)(2) does not govern the dischargeability of student loan debts in a chapter 13 bankruptcy case. See In re Mammel, 221 B.R. 238, 241 (Bankr.N.D.Iowa 1998). Even if a student loan is modified by a chapter 13 plan to allow for partial repayment, § 1328(a)(2) specifically excepts student loans from discharge. Id. (stating that § 1322(b)(2) allows for modification, but the dischargeability of student loan debts are governed by § 523(a)(8)). Therefore, even if a student loan debt is modified by a chapter 13 plan, the unpaid portion of the student loan debt survives bankruptcy. See Dolph, 215 B.R. at 835. Creditors may still recover the unpaid portion of the student loan personally from the debtor outside of bankruptcy. See Pardee, 218 B.R. at 920–21. Consequently, § 1322(b)(2) allows for modification of student loans within a chapter 13 plan, but it does not authorize bankruptcy courts to partially discharge student loans.

Additionally, the plain language of § 523(a)(8) supports Appellants' position that the entire student loan debt is either nondischargeable or dischargeable on the basis of undue hardship. Where the interpretation of the language of a statute is called into question, the logical beginning is with the language of the statute itself. See United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). "Where the statutory language is plain, the inquiry ends and the sole function of the court is to enforce the statute according to its terms." Markovich v. Samson (In re Markovich), 207 B.R. 909, 912 (9th Cir. BAP 1997) (citing Ron Pair Enters., 489 U.S. at 241, 109 S.Ct. 1026). Thus, "except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters,'" the plain language of a statute should be conclusive. Ron Pair Enters., 489 U.S. at 242, 109 S.Ct. 1026 (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). "[A]s here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" Id. at 241, 109 S.Ct. 1026 (quoting Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)).

Section 528(a)(8)(B) states that student loans will be discharged if "excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). Section 101(12) defines the term "debt" as "liability on a claim." 11 U.S.C. § 101(12). Section 101(5) defines the term "claim" as a "right to payment, whether or not such right is ... secured, or unsecured...." 11 U.S.C. § 101(5). "Plainly understood, 'liability on a claim' encompasses the entire liability, not merely some portion of the debt or merely selected terms of repayment." Skaggs v. Great Lakes Higher Educ. Corp. (In re Skaggs), 196 B.R. 865, 866 (Bankr.W.D.Okla.

---

10. Section 1322(b)(2) provides:
(b) Subject to subsections (a) and (c) of this section, the plan may—
....
(2) modify the rights of holders of secured claims, other than a claim secured only by a

security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.
11 U.S.C. § 1322(b)(2).

1996). *See also Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.),* 66 F.3d 1091, 1095 (9th Cir.1995) (stating that a liability on a claim encompasses the entire debt); *Shankwiler v. National Student Loan Mktg. (In re Shankwiler),* 208 B.R. 701, 707 (Bankr.C.D.Cal.1997) (same).

▉ Furthermore, where Congress has failed to include language in statutes, it is presumed to be intentional when the phrase is used elsewhere in the Code. *See Bates v. United States,* — U.S. —, 118 S.Ct. 285, 285–90, 139 L.Ed.2d 215 (1997) (quoting *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)). Here, Congress could have allowed a discharge "to the extent" that such debt will cause undue hardship. *See Hawkins v. Buena Vista College (In re Hawkins),* 187 B.R. 294, 301 (Bankr. N.D.Iowa 1995); *Shankwiler,* 208 B.R. at 707–08; *Hinkle v. Wheaton College (In re Hinkle),* 200 B.R. 690, 693 (Bankr. W.D.Wash.1996). We note that Congress included the phrase, "to the extent," in three other subdivisions of the dischargeability statute, § 523(a)(2), (a)(5), and (a)(7). *See* 11 U.S.C. § 523(a)(2), (a)(5), and (a)(7).[11] However, this phrase is not used in § 523(a)(8).

▉ Consequently, because the plain language of § 523(a)(8) implies that only the entire debt can be discharged for undue hardship, and because Congress expressly limited the extent of a debt's discharge in other subsections of § 523, we hold that § 523(a)(8) does not authorize a partial discharge of student loans.

We note, however, that a number of bankruptcy courts have determined that student loan debts may be partially discharged.[12] However, these bankruptcy courts have either found § 523(a)(8) to be ambiguous, *see Rivers,* 213 B.R. at 618; *Heckathorn,* 199 B.R. at 195, or have relied on equitable principles.[13] *See Fox,* 189 B.R. at 120; *Woyame,*

---

**11.** Sections 523(a)(2), (a)(5), and (a)(7) provides:

> (a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> . . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, *to the extent* obtained, by—
> (A) false pretenses, a false representation, or actual fraud. . . .
> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not *to the extent* that—
> (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise . . .; or
> (B) such debt includes a liability designated as alimony, maintenance, or support;
> (7) *to the extent* such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—
> (A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or
> (B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition.

11 U.S.C. § 523(a)(2), (a)(5), and (a)(7) (emphasis added).

**12.** *See Rivers v. United Student Aid Funds, Inc. (In re Rivers),* 213 B.R. 616, 618 (Bankr.S.D.Ga. 1997); *Heckathorn v. United States (In re Heckathorn),* 199 B.R. 188, 195–96 (Bankr.N.D.Okla. 1996); *Wetzel v. New York State Higher Educ. Servs. Corp. (In re Wetzel),* 213 B.R. 220, 226–27 (Bankr.N.D.N.Y.1996); *Raimondo v. New York Higher Educ. Servs. Corp. (In re Raimondo),* 183 B.R. 677, 681 (Bankr.W.D.N.Y.1995); *Fox v. Student Loan Mktg. Ass'n (SLMA) (In re Fox),* 189 B.R. 115, 117 (Bankr.N.D.Ohio 1995); *Oderkirk v. Northwest Educ. Loan Ass'n, Fin. Assistance, Inc. (In re Oderkirk),* 1995 WL 241338, at *3 (Bankr.D.Idaho Apr. 13, 1995); *Gammoh v. Ohio Student Loan Comm'n (In re Gammoh),* 174 B.R. 707, 711–12 (Bankr.N.D.Ohio 1994); *Woyame v. Career Educ. & Management (In re Woyame),* 161 B.R. 198, 203 (Bankr.N.D.Ohio 1993); *Silliman v. Nebraska Higher Educ. Loan Program (In re Silliman),* 144 B.R. 748, 752 (Bankr.N.D.Ohio, 1992); *Albert v. Ohio Student Loan Comm'n (In re Albert),* 25 B.R. 98, 102–03 (Bankr.N.D.Ohio 1982); *Littell v. State of Or. (In re Littell),* 6 B.R. 85, 89 (Bankr.D.Or.1980).

**13.** Although a partial discharge may provide a more equitable result, we respectfully disagree with the cases that hold that a debtor can receive a partial discharge of a student loan debt. The Code does not grant bankruptcy courts the authority to partially discharge student loan debts. *See Hawkins,* 187 B.R. at 301. We should leave it to Congress and not the bankruptcy courts to determine whether to allow for the partial dischargeability of student loans. *See Wardlow v. Great Lakes Higher Educ. Corp. (In re Wardlow),* 167 B.R. 148, 152 n. 6 (Bankr.W.D.Mo.1993)

161 B.R. at 203; *Silliman*, 144 B.R. at 752. As discussed above, because we find the language of § 523(a)(8) to be clear and unambiguous, we respectfully disagree with these cases.

We further note that the Sixth Circuit in *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433 (6th Cir.1998), has held that student loans may be partially discharged. However, the Sixth Circuit did not address the plain language of § 523(a)(8), but relied on the bankruptcy court's equitable powers under § 105(a) to grant debtors a partial discharge. *Id.* at 438–39.

"The equity powers of the bankruptcy court cannot be used to override specific statutory provisions in the Code." *Markovich*, 207 B.R. at 913. Section 105(a) provides a general grant of authority to bankruptcy courts. *See United States v. Smith (In re Smith)*, 158 B.R. 813, 817 (9th Cir. BAP 1993). On the other hand, § 523(a)(8) is the specific provision governing a hardship discharge of student loan debts. Consequently, while bankruptcy courts may exercise equitable powers under § 105(a), they must do so within the parameters of more specific Code provisions. Section 105(a) can-

not be used to circumvent the clear and unambiguous language of § 523(a)(8). Therefore, we respectfully disagree with the Sixth Circuit because, in creating a partial discharge right, it used § 105(a) to trump the statutory limitations of § 523(a)(8).

Accordingly, the bankruptcy court erred when it exercised equitable principles to partially discharge the Student Loan.

## C. *The Bankruptcy Court Erred When It Failed To Consider Whether Appellees Attempted To Make A Good Faith Effort To Repay The Student Loan.*

■ Congress did not define "undue hardship" when it enacted § 523(a)(8)(B). Courts, therefore, have developed different tests to determine whether a debtor satisfies the undue hardship requirement.[14] However, under any undue hardship test, the bankruptcy court must at least consider whether a debtor has made a good faith effort to repay the student loans.

Here, the bankruptcy court refused to admit evidence concerning Appellees' alleged bad faith effort to repay the Student Loan. Furthermore, the bankruptcy court did not make findings of fact relating to the "good faith" effort of Appellees in the Discharge

(citing *Nunn v. State of Wash. (In re Nunn)*, 788 F.2d 617, 619 (9th Cir.1986) (Wright, J., concurring)).

14. Different tests have been applied to determine whether a debtor satisfies the undue hardship standard. *See Pena*, 207 B.R. at 921. The first test, set forth in *Bakkum v. Great Lakes Higher Educ. Corp. (In re Bakkum)*, 139 B.R. 680 (Bankr. N.D.Ohio 1992), requires the bankruptcy court to address:

(1) whether it is reasonable, considering the debtor's current and future income and expenses, to require the debtor to repay some or all of the loan; (2) whether the debtor has made a *good faith* effort to repay the loan; and (3) allowing the discharge of the loan would thwart the legislative intent in passing section 523(a)(8).

*Pena*, 207 B.R. at 919 (emphasis added) (citing *Bakkum*, 139 B.R. at 683).

The second test, set forth in *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir.1987), requires a debtor to show: (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that

additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made *good faith* efforts to repay the loans.
*Brunner*, 831 F.2d at 396 (emphasis added).

The third test, set forth in *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356 (6th Cir.1994), *cert. denied*, 513 U.S. 1081, 115 S.Ct. 731, 130 L.Ed.2d 634 (1995), requires the court to address:

(1) Whether the debtors are capable of paying the loan while maintaining a minimal standard of living; (2) Whether the debtor's financial circumstances are likely to persist for a significant portion of the repayment period; (3) The debtor has made a *good faith* effort to repay the loan.

*Pena*, 207 B.R. at 921 (emphasis added) (citing *Cheesman*, 25 F.3d at 359).

Other courts apply the totality of circumstances in determining whether a debtor is entitled to a hardship discharge. *See Strauss*, 216 B.R. at 642–43; *Swanson v. Northwest Educ. Loan Ass'n (In re Swanson)*, 1994 WL 553047, at *3 (Bankr.D.Idaho Sept. 30, 1994); *Johnson v. USA Funds, Inc. (In re Johnson)*, 121 B.R. 91, 93 (Bankr.N.D.Okla.1990).

Order. Rather, the bankruptcy court quoted directly from *Brunner*, but struck the "good faith" prong of the test. Consequently, the bankruptcy court erred in failing to consider whether Appellees made a good faith effort to repay the Student Loan in determining whether Appellees were entitled to a hardship discharge.

## V. CONCLUSION

In sum, the bankruptcy court did not err in denying the Motion to Dismiss because the Complaint was ripe for adjudication.

However, the bankruptcy court erred in partially discharging the Student Loan because § 523(a)(8) does not provide for the partial discharge of student loans.

Similarly, the bankruptcy court erred when it granted Appellees a hardship discharge without considering whether Appellees made a good faith effort to repay the Student Loan.

Accordingly, we AFFIRM the bankruptcy court's holding that a hardship discharge of the Student Loan was ripe for adjudication before Plan completion.

However, we VACATE the bankruptcy court's holding that it had the authority to grant a partial discharge of the Student Loan and REMAND for the bankruptcy court to determine whether Appellees made a good faith effort to repay the Student Loan and are entitled to a hardship discharge of the entire Student Loan.