In re Leroy H. RAYMOND, Debtor.

Leroy H. RAYMOND, Plaintiff,

v.

NORTHWEST EDUCATION LOAN ASSOCIATION, Loan Service Center, and Financial Assistance, Inc., Defendants.

Bankruptcy No. 93–00355.
Adv. No. A93–04747.

United States Bankruptcy Court,
W.D. Washington,
At Seattle.

June 24, 1994.

Stephen D. Cramer, Cramer & Goodman, P.S., Seattle, WA, for debtor/plaintiff.

Bruce Fine, Aiken & Fine, P.S., Seattle, WA, for creditor/defendant.

## MEMORANDUM OPINION

KAREN A. OVERSTREET, Bankruptcy Judge.

### I. FACTS

The plaintiff/debtor here seeks to discharge his student loans under 11 U.S.C. § 523(a)(8)(B). That section permits the Court to order discharge of a student loan if excepting the loan from discharge would impose an undue hardship on the debtor and the debtor's dependents.

The debtor filed his Chapter 7 proceeding on January 15, 1993. He commenced this adversary proceeding on June 21, 1993, by filing a complaint to determine the dischargeability of seven guaranteed student loans, which include: a $5,000 loan made June 4, 1986, a $3,000 loan made October 13, 1981 (the "Citibank Loans"), and a $2,500 loan made November 10, 1982, a $2,500 loan made September 24, 1984, a $2,100 loan made June 6, 1985, a $5,000 loan made September 15, 1985, and a $1,120 loan made December 19, 1988 (the "Washington Mutual Loans").

The Citibank Loans first became due in September of 1990, and the Washington Mutual Loans first became due in July of 1990. Accordingly, the loans do not fall under Section 523(a)(8)(A). The defendants have paid the loan lenders on their guaranties.

As of June 15, 1994, the balance of the Citibank Loans was $9,415.16 and the balance of the Washington Mutual Loans was $16,676.48. The total amount owing is therefore $26,091.64. The parties do not dispute the amount of the loans.

The debtor is 48 years old. He is not married and has no dependents. He completed a two year program in computer science at Big Bend Community College commencing in 1979. After graduating from Big Bend in 1982, he attended Western Washington University and obtained a degree in business administration in June 1985. He then enrolled in the MBA program for information systems management at City University. He obtained his MBA degree from City University in 1990. All of the loans at issue here were incurred to finance different phases of the debtor's education, beginning with a note signed in 1981 and ending with a note dated in 1988.

The debtor testified concerning various jobs he has held. From 1985 to 1987 he was employed by the U.S. Army Corps of Engineers as an engineering technician. His gross annual wages during that time were between $16,000 and $17,000. In 1987, the debtor went to work for Chemical Waste Management as a project assistant but was laid off in 1989. His gross annual salary at Chemical Waste Management was approximately $20,000. For the next nine months, the debtor worked at temporary jobs.

In November of 1989, the debtor was hired by The Boeing Company as a spares analyst, and he worked for Boeing until the end of 1993. Initially, he was paid $8.00 per hour, and by the time he received his layoff notice from Boeing in late 1993, his gross annual salary was $26,800. The debtor's layoff was effective in January 1994. Although the debtor testified that he has responded to over 25 job opportunities (most of these requiring some computer or information systems background and offering annual salaries ranging between $20,000 and $24,000), the debtor has not secured any employment to date. He has no expectation of being rehired by Boeing and is currently receiving unemployment compensation in the amount of $309 per week. He expects that his unemployment compensation will terminate in November of 1994. He also has applied for a $5,000 loan from his Individual Retirement

Account, anticipating the need for funds after his unemployment compensation is terminated.

None of the jobs held by the debtor described above required the use of his advanced degree. His career goal is to secure employment in information systems management, but he has not achieved that goal.

The debtor has made some efforts to repay the loans. He made 10 monthly payments on the Citibank Loans, with three payments made initially and seven more payments after a six-month forbearance period. The last payment on the Citibank Loans was made on approximately August 15, 1991. The debtor also made four $150 payments between May and August of 1992, after the guarantor had paid the lender in full on the Citibank Loans.

The debtor made nine monthly payments on the Washington Mutual Loans between July 1990 and March 1991, then received a forbearance from April 1991 to September 1992. No payments have been made since March 1991 on these loans.

Although the government offers programs to consolidate and extend payments on student loans, the debtor has not made any inquiries about or requests to participate in these programs.

The debtor testified about his current living expenses using budgets he had drawn up for January and February of·1993. In those months, the debtor's monthly expenses were approximately $1,419.80 and his net monthly income was $1,908.16 (considering only his Boeing employment). The debtor estimated his expenses to be $913.82 in his schedules filed in January 1993. At trial, the debtor testified that his total monthly expenses have increased by about $232 net, taking into account certain decreased expenses. His expenses include $50 per month for the cost of rebuilding his truck engine, which payments will cease in approximately two months, and discretionary payments of $65 a month for tithing and life insurance. See Appendix A. The debtor did not testify as to any exceptional circumstances that would substantially increase his expenses in the foreseeable future.

The debtor does not have significant assets. There were some discrepancies between the values to which the debtor testified at trial and the values he ascribed to the same assets in his schedules filed in January 1993. Although the debtor provided explanations for some of the differences, he did not explain the significant difference in the amount of his pension funds. On his schedules, he reported that he had $1,862 in his Boeing VIP account and $1,482 in his Boeing FSP account. The debtor's testimony was that he received his FSP funds in cash upon termination of his employment, and that he rolled his VIP funds into an IRA. The debtor testified that the current balance of his IRA is $11,000. This would mean that the debtor made very substantial contributions to his VIP/IRA account between January of 1993 and January of 1994.

Finally, the debtor testified that he is a Type 2 Diabetic, which means that he takes oral medication to control this condition. He testified that the medicine sometimes makes him drowsy, and he has had some loss of feeling in his feet. The debtor did not indicate that his condition has any specific or significant effect on his job performance.

## II. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, as it is a core proceeding to determine the dischargeability of a debt under 11 U.S.C. § 523(a).

## III. DISCUSSION

### A. Burden of Proof:

The burden of proof in this case is divided between the parties. In re D'Ettore, 106 B.R. 715, 717 (Bankr.M.D.Fla.1989). The defendants must first establish the existence of the debt, that the debt is owed to or insured or guaranteed by a governmental agency or nonprofit institution of higher learning, and that the debt first became payable less than seven years prior to the date of bankruptcy. The defendants have met their burden in this case. The burden then shifts to the debtor to prove undue hardship within the meaning of Section 523(a)(8)(B). In re Webb, 132 B.R. 199 (Bankr.M.D.Fla.

1991); *In re Binder*, 54 B.R. 736, 739 (Bankr. N.D.1985).

### B.  *Undue Hardship.*

■ Courts around the country have adopted various tests for determining when excepting a student loan from discharge will impose undue hardship on the debtor. *See, e.g., In re Andrews*, 661 F.2d 702, 704 (8th Cir.1981); *In re Rappaport*, 16 B.R. 615, 617 (Bankr.D.N.J.1981); *In re Briscoe*, 16 B.R. 128, 131 (Bankr.S.D.N.Y.1981); *In re Johnson*, 5 Bankr.Ct.Dec. 532, 537 (Bankr.E.D.Pa. 1979); *In re Densmore*, 8 B.R. 308, 309 (Bankr.N.D.Ga.1979). The Ninth Circuit has not addressed this issue.

■ This Court adopts the reasoning of the Second Circuit Court of Appeals as set forth in *In re Brunner*, 46 B.R. 752 (S.D.N.Y. 1985), *aff'd*, 831 F.2d 395 (2nd Cir.1987). In a well-reasoned opinion, the court held in *Brunner* that student loans are dischargeable only if (1) the debtor cannot, based on current income and expenses, maintain a "minimal" standard of living for himself or his dependents if forced to repay the loans, (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loan, and (3) the debtor has made good faith efforts to repay the loans. The debtor must prove each of the foregoing elements by a preponderance of the evidence. The Court finds that the debtor here has not met his burden.

■ If the debtor's only source of income is unemployment compensation, then he has shown that it would be difficult to repay his student loans. Even with his unemployment compensation of $309 per week, however, the debtor would be close to meeting his current budgeted expenses as shown on Appendix A. Also, the debtor testified that he has applied for a $5,000 loan from his IRA. These additional funds could supplement the debtor's income while he is drawing unemployment compensation and could support him once his unemployment compensation has terminated if he has not yet found employment at that time. The Court therefore finds that, even with his current income and expenses, the debtor can maintain a "minimal" standard of living if forced to repay the loans.

The debtor did not demonstrate additional or extraordinary circumstances that would lead the Court to conclude that his unemployment will persist for any significant portion of the loan payoff period. His testimony about his diabetes did not establish this condition as a serious impediment to job stability in the past or the future. He has no dependents.

The debtor has been unemployed for only six months, and his employment history demonstrates his ability to regain employment after a layoff or termination. From this evidence, the Court cannot find that the debtor is likely to remain unemployed indefinitely. Instead, the Court finds that the debtor is likely to regain employment, perhaps not at a salary level as high as his last salary at Boeing, but in the range of $20,000 to $25,000 annually. The debtor's employment history shows a steady upward trend in annual gross income to a high of $26,800 while at Boeing. At this salary level, the debtor would have sufficient disposable income on a monthly basis (assuming discretionary payments for life insurance and tithing are not made), from which he could make payments on his student loans. *See* Appendix A (using annual income of $22,898). It should be noted that although the debtor's budget is lean, it does afford him more than a "minimal" standard of living.

It should also be noted that, although the combined monthly payment on the debtor's student loans is currently $277.95, a witness for the defendants testified that these payments could likely be reduced even further through consolidation. The defendants have granted the debtor forbearance periods when necessary in the past. The debtor has not inquired into the possibility of consolidating his student loans.

As to the issue of good faith, the Court finds that the debtor has made only minimal efforts to repay his student loans. The evidence shows that the debtor made no payments on his student loans for at least half the time he was employed at Boeing. Instead, he made payments on his credit card debts (which have now been discharged in

bankruptcy) and into his Boeing retirement account.

Finally, the debtor contends that the Court should consider the debtor's inability to utilize his education as he had hoped he could. The Court does not believe that it is appropriate to consider the "value" of the debtor's chosen education. The government is not an insurer of the value of education. *In re Brunner,* 46 B.R. at 755, fn. 3.

Accordingly, the Court finds that the debtor's student loans are nondischargeable under 11 U.S.C. § 523(a)(8)(B).

## APPENDIX A

| | | |
|---|---|---|
| Gross income while at Boeing 2/93 [1] | | $ 1,908.16 |
| Budgeted expenses from Exhibit 14 | | (1,522.80) |
| | | |
| Disposable income 2/93 | | $ 385.36 |
| Increased expenses as of 6/94 | | |
| Tithing | $ 15.00 | |
| Auto repair | 50.00 | |
| Clothes | 10.00 | |
| Cable TV | 11.00 | |
| Electricity | 15.00 | |
| Phone | 10.00 | |
| Gas | 15.00 | |
| Life Ins. | 40.00 | |
| Life ins. loan | 25.00 | |
| Groceries | 50.00 | |
| Homeowners' ins. | 11.00 | |
| Auto ins. | 25.00 | |
| | | |
| Subtotal | $277.00 | |
| Less [2] | | |
| Auto repair | (50.00) | |
| Tithing | (25.00) | |
| Life ins. | (40.00) | |
| | | |
| Subtotal | ($115.00) | |
| Decreased expenses as of 6/94 | | |
| Fitness/health | ($10.00) | |
| Health ins. | ( 15.00) | |
| Lunches | ( 20.00) | |
| | | |
| Subtotal | ($45.00) | |
| Net increase in expenses as of 6/94 | | (117.00) |
| Adjusted monthly disposable income | | $268.36 |
| Total monthly student loan payments at current payment level | | $277.95 |
| Difference | | ($ 9.59) |

1. This works out to an annual salary of $22,898, which is within the range of salaries for jobs for which the debtor has applied in the last six months.

2. According to the debtor's testimony, he has only about two more auto repair payments to make. The other listed payments are discretionary expense payments.