In re Terri LeTendre HINKLE, aka Terri LeTendre, dba Breaking Free, Debtor.

Terri LeTendre HINKLE, aka Terri LeTendre, dba Breaking Free, Plaintiff,

v.

WHEATON COLLEGE, Sallie Mae, and Whitworth College, Defendants.

Bankruptcy No. 95–08048.
Adversary No. A96–00910.

United States Bankruptcy Court, W.D. Washington, at Seattle.

Aug. 27, 1996.

John S. Wooburne, Bellevue, WA, for plaintiff.

Bruce Fine, Aiken & Fine, Seattle, WA, for defendants.

## MEMORANDUM OPINION

SAMUEL J. STEINER, Bankruptcy Judge.

The debtor commenced this adversary proceeding to determine the dischargeability of student loans. The complaint identifies loans made by defendants Whitworth College, Wheaton College, and Sallie Mae.[1] All of the defendants were served and answered. Whitworth and Wheaton did not appear at the pretrial conference or at the trial. NELA is the real party in interest on the Sallie Mae loans.

### FACTS

The debtor is in her early fifties. She graduated from high school in June, 1961, and started attending Whitworth. However, she did not finish or receive a degree. She then attended business school, after which she worked as a legal secretary for approximately two years. At some point she married and had three children. She put her husband through dental school, obtained an AA degree in dental hygiene and worked as a hygienist for 18 years. The debtor's hus-

1. The loans made to the debtor are as follows:

| Date | Lender | Amount of Loan | Balance |
|------|--------|----------------|---------|
| | Whitworth Coll. | $2,800 | $2,246.76 |
| 1/13/89 | Wheaton Coll. | 1,000 ) | |
| 6/20/89 | " | 800 ) | 1,938.62 (total due Wheaton) |
| 5/17/89 | " | 665 ) | |
| 4/4/86 | Sallie Mae | 2,500 | 2,781.72 |
| 3/16/87 | " | 2,500 | 2,781.72 |
| 8/14/87 | " | 4,000 | 4,451.01 |
| 8/15/88 | " | 7,500 | 8,345.67 |
| 8/18/89 | " | 7,500 | 8,345.67 |
| 8/13/92 | " | 1,764 | 1,452.37 (Plus loan for debtor's son) |

band was abusive toward her and the children. As a result, in 1985, she and the three children went into hiding. A divorce occurred in 1987. In the settlement, the debtor was awarded the family home, which she ultimately lost through foreclosure. She also received a cash payment of $35,000 in December, 1992.

In 1986, the debtor returned to Whitworth College to pursue a degree in psychology. She obtained a bachelor's degree in 1988 and then went on to Wheaton College for postgraduate studies. After obtaining a master's degree in 1990, she obtained work at a counseling center, where she made approximately $25,900 in 1991 and $29,500 through August of 1992. In each of the two years, she also received approximately $3,000 in interest income from her former husband; and in December of 1992, she received the $35,000 cash payment from him. In 1993, the debtor established her own counseling practice in Illinois, but after only two months she relocated to Seattle to be with her son, who was having psychiatric problems. Her income tax return for 1992 shows an adjusted gross income of $11,738. The debtor was unable to find a counseling job in Seattle, so she commenced her own practice. The business suffered a loss in 1994. After a year, that is in March of 1996, the debtor went to work as a secretary for Simon Golub & Sons, Inc., a wholesale jeweler. Her salary is $25,000 per year, and she has a monthly net income of approximately $1,595.

In April, 1996, the debtor was injured in a bus accident and sustained injuries to her clavicle and shoulder. She has made a claim for $30,000, and liability has not been contested. She will not receive a settlement for at least a year, and the amount is not known. Her eventual recovery will be net of her costs and attorney fee, as well as advances her employer has made for her medical bills. The debtor may require surgery, but she will not know this for a year or more. During the trial, her attorney stated that any net recovery would be applied to the outstanding student loans.

*DISCUSSION*

The issue before the Court is whether the educational loans are dischargeable under 11

U.S.C. 523(a)(8). As to Whitworth and Wheaton, the debtor made an oral motion for default based on their failure to appear for the trial. Inasmuch as the initial burden of proving the loans rests with the lenders, the motion should be granted. As to Sallie Mae, the debtor does not dispute the amounts of the loans, nor does she assert the seven-year bar to recovery contained in Sec. 523(a)(8)(A).

Of the loans made by Sallie Mae, one was a "Parent Plus" loan which the debtor guaranteed for her son's education. NELA takes the position that the statute covers any program funded by a governmental unit, without distinguishing the identity of the borrower. In support of its position NELA cites *Pelkowski v. Ohio Student Loan Comm.*, 153 B.R. 29 (W.D.Pa.1992); aff'd 990 F.2d 737 (3rd Cir.1993). A plain reading of the statute supports this view. Therefore the only remaining question, as to all the Sallie Mae loans, is whether "excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents." Sec. 523(a)(8)(B). The burden rests with the debtor to prove hardship by a preponderance of the evidence. *In re Raymond*, 169 B.R. 67 (Bankr.W.D.Wash.1994).

The Code does not contain a definition of "undue hardship". As a result, courts have devised a number of tests to assist in exercising their discretion. The most serviceable test is one first enunciated in *In re Brunner*, 46 B.R. 752 (S.D.N.Y.1985); aff'd 831 F.2d 395 (2nd Cir.1987). The *Brunner* test was adopted by another Judge of this Court in *In re Raymond, supra*, and both parties have urged its application here. Under *Brunner* and *Raymond*, the loans are dischargeable only if

(1) the debtor cannot, based on current income and expenses, maintain a "minimal" standard of living for [herself] or [her] dependents if forced to repay the loans, (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loan, and (3) the

debtor has made good faith efforts to repay the loans.

*In re Raymond,* 169 B.R. at 70.

■ Defining the test does not end the inquiry. The courts have not interpreted "repayment" to mean repayment in full at once. If this were intended, repayment would be impossible in most cases. A number of courts have used Sec. 105 to restructure student loans, either by finding them to be only partially nondischargeable, deferring enforcement, or fashioning payment schedules. Others have rejected this approach, noting that the "court must confine the scope of its inquiry to the language of a particular statute unless it is ambiguous on its face." *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989), quoted in *In re Skaggs,* 196 B.R. 865 (Bankr.W.D.Okla.1996). See also *In re Wardlow,* 167 B.R. 148 (Bankr. W.D.Mo.1993); *In re Hawkins,* 187 B.R. 294 (Bankr.N.D.Iowa 1995). This Court agrees with those courts that have refused to restructure student loans. While the sparse language of Sec. 523(a)(8)(B) may at times result in uncertainty and inequity, it is not ambiguous. As noted by the court in *Hawkins,* had Congress intended the restructuring of student loans in bankruptcy, it could have provided for dischargeability "to the extent" that payment would impose undue hardship. That Congress did not intend this result is further evidenced by Sec. 1328(a)(2), which was amended in 1990 to except student loans from the chapter 13 discharge. See *Hawkins, Id.* at 152–53.

■ While a bankruptcy court cannot restructure the loans, there is no reason that it cannot treat each one separately for the purpose of dischargeability, if the loans have not been consolidated by agreement of the parties. In this instance, there is no evidence that the six Sallie Mae loans have been consolidated. In its statements to the debtor, Sallie Mae accounts for the loans separately, identifying the date of each, the original loan amount, the outstanding principal interest

rate, and loan program. Thus in applying the hardship elements in the present case, this Court may look at each of the loans separately, in the order that they were made.

■ The first element of discharge requires an examination of the debtor's current financial condition to determine whether repayment would cause her standard of living to fall below a reasonable level. Counsel for NELA has attached to his brief a copy of the 1995 Federal Poverty Guidelines, which for an individual shows annual income of $7,470. This is not helpful. Abject poverty is not the standard. *In re Faish,* 72 F.3d 298 (3rd Cir.1995). The debtor urges adoption of guidelines established for IRS Balance Due Account Procedures, which would permit expenses of approximately $1,720 in the debtor's income bracket. The debtor has not laid any foundation relating to the purpose of these tables, nor presented any evidence or reasoning compelling their adoption in cases such as this. This Court concludes that it is left to its discretion in assessing the debtor's budget, to determine whether it contains unnecessary or unreasonably high expenses.

The debtor's Schedule J shows monthly expenses of $1,298, and her current schedule shows expenses of $1,537. The major increase is due to rent, which has gone from $325 to $690 per month. Her net income is $1,595 per month. Additionally, she should receive something on her personal injury claim, although the timing and net to her is speculative. The Court concludes that with some economies, she can currently manage the scheduled payment of $264.97.

The second element of the *Brunner* test is whether "additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loan...." *Raymond,* 169 B.R. at 70. Since this Court cannot restructure the loan, it must evaluate the debtor's future ability to make the loan payments as currently scheduled.[2] The repayment period for all six loans is 105

---

**2.** While Sallie Mae offered testimony regarding the existence of repayment programs which may come into play if the Court holds the loans to be nondischargeable, this is mere speculation. If the government wished to negotiate new payment schedules with debtors in bankruptcy, it could do so. Since it does not, the Court must evaluate the schedule that currently exists.

months. The scheduled payments increase every 24 months from $264.97 to $365.82 and finally $508.17. Thereafter, the payments reach $709.17 for 17 months, then $448.29 for one month, and $20.10 for the final 15 months. The Court concludes that it is unlikely the debtor, at her age and with her earning capacity, will be able to afford the increased payments without undue hardship. Even if the payments were amortized over a longer period, it is an "additional circumstance" indicating that her state of affairs will persist. The debtor simply has fewer years in which to develop her earning potential.

As to the third element of the test, the Court concludes that the debtor has made a good faith effort to repay the loans. Since they first came due, she has paid a total of $6,255.17. This was in addition to payments of over $1,900 to Whitworth and Wheaton. The first payment to Sallie Mae became due in December, 1988, but was deferred three times, once because of graduate school and twice since then, first for low income and again because of a surgery. The last deferment ended in May, 1994, and the debtor has not paid anything since that time. Notwithstanding the payments made, the debtor has made no headway on the loans, the deferrals and defaults having added $6,911.75 to the principal.

NELA complains that the debtor should have used the $35,000 payment from her divorce settlement to pay down the loans. This might have been a prudent thing to do, but failure to do so cannot be deemed bad faith. She received the payment in a year that she had very little income, and her accounting of the proceeds reveals nothing extravagant.

### CONCLUSION

1. The debtor can pay the first three Sallie Mae loans without undue hardship. Accordingly, the first three loans are not nondischargeable in bankruptcy. The loans total $10,014, with interest at 5% per annum, and according to NELA are payable at $264.97 per month.

2. Repayment of the remaining three loans, which total $18,143.71, constitutes an undue hardship and the loans are dischargeable, except as set forth in paragraph 3 below.

3. Any sums received by the debtor from the personal injury claims, after payment of costs and attorneys fees and the loans received from her employer for her medical expenses, will pursuant to the statement of counsel, be applied to the three nondischargeable loans.

4. Pursuant to Rule 52(a) of the Federal Rules of Bankruptcy Procedure, this opinion will constitute the Court's Findings of Fact and Conclusions of law.