94 F.3d 568
 96 Cal. Daily Op. Serv. 6340
 Vernon B. CLINTON, Plaintiff-Appellant,
v.
ACEQUIA, INC., an Idaho Corporation; Rosemary Haley;
Michael J. Haley; John Does, 1-3, Defendants-Appellees.
Vernon B. CLINTON, Plaintiff-Appellee,
v.
ACEQUIA, INC., an Idaho Corporation; Estate of Rosemary
Haley; Michael J. Haley, Defendants-Appellants.
 Nos. 95-35531, 95-35714.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 7, 1996.
Decided Aug. 27, 1996.
 
 Richard H. Greener, Stanley W. Welsh, and Phil E. DeAngeli, Cosho, Humphrey, Greener & Welsh, P.A., Boise, Idaho, for plaintiff-appellant/appellee.
 James T. Jones, Jim Jones & Associates, Boise, Idaho, for defendants-appellees/appellants.
 Appeals from the United States District Court for the District of Idaho, Jack E. Tanner, District Judge, Presiding. D.C. No. CV-90-00307-JET.
 Before: LAY,* CHOY and LEAVY, Circuit Judges.
 LAY, Circuit Judge:
 
 
 1
 Vernon B. Clinton, founder and fifty-percent shareholder in defendant Acequia, Inc., appeals the district court's entry of partial summary judgment in favor of defendants (collectively, "Acequia") on Counts One, Two, Four, Five, and in part on Count Three of his complaint, and the denial of his motion for relief from the judgment. In a consolidated appeal, Acequia challenges the district court's handling of the subsequent trial on Count Three. We vacate and remand.
 
 
 2
 Clinton originally filed this suit in state court.[1] In 1991, two years after the suit was commenced, Acequia sought removal to the federal district court. Although the district court did not explain why it permitted removal,[2] we may safely infer that it perceived the state law claims to be precluded by the res judicata implications of prior federal judgments against Clinton. The court's summary judgment orders indicate that it understood Count Four (the breach of contract claim), and Counts One and Two (the shareholder derivative claims), to be barred by a previous bankruptcy action in which Clinton was divested of control of Acequia. See Acequia I, 787 F.2d at 1355-57. Moreover, in its notice of removal, Acequia urged that Clinton's claims were barred by principles of res judicata and that removal was necessary to prevent him from attacking those rulings collaterally. Thus, we may reasonably presume that the existence of the earlier federal judgments constituted the basis for the district court's exercise of jurisdiction.
 
 
 3
 We initially raise the issue of subject matter jurisdiction. We must determine whether one or more of Clinton's claims "had a sufficient federal character to support removal." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981). We do so sua sponte. See Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908).
 
 REMOVAL JURISDICTION
 
 4
 A defendant ordinarily may remove a state court action to federal court only if the plaintiff could have brought it there originally. 28 U.S.C. § 1441; Mottley, 211 U.S. at 152, 29 S.Ct. at 43.[3] Under the "well-pleaded complaint" rule, the plaintiff's complaint must contain a claim "arising under" federal law, and a defendant may not invoke removal jurisdiction simply by asserting a federal defense. Mottley, 211 U.S. at 152, 29 S.Ct. at 43. This general rule is qualified by the "artful pleading" doctrine, however, whereby a federal court may recharacterize claims that, while pleaded under state law, are actually governed exclusively by federal law. Sullivan v. First Affiliated Securities, Inc., 813 F.2d 1368, 1372 (9th Cir.), cert. denied, 484 U.S. 850, 108 S.Ct. 150, 98 L.Ed.2d 106 (1987). This circuit has found the artful pleading doctrine to support removal where a plaintiff files his state law claims in state court in an attempt to circumvent the res judicata effect of a prior federal claim that has been reduced to judgment. See Salveson v. Western States Bankcard Ass'n, 731 F.2d 1423, 1429 (9th Cir.1984); cf. Ultramar Am. Ltd. v. Dwelle, 900 F.2d 1412, 1415-16 (9th Cir.1990). In general, however, the artful pleading doctrine constitutes a "narrow exception to the straightforward rules of removal jurisdiction," to be invoked " 'only in exceptional circumstances as it raises difficult issues of state and federal relationships and often yields unsatisfactory results.' " Sullivan, 813 F.2d at 1372 (quoting Salveson, 731 F.2d at 1427).
 
 Counts One and Two
 
 5
 Although Count One (waste of corporate assets) and Count Two (breach of fiduciary duty and extraction of funds) allege somewhat different theories of recovery, both allege many common facts and both may be characterized as shareholder derivative claims. The district court found that both counts constituted a direct challenge to the bankruptcy plan (the "Plan"). Specifically, the court held, the bankruptcy court retained jurisdiction over proceedings pertaining to Article V of the Plan, namely: sales of property; administrative expenses; compensation; preconfirmation causes of action existing in favor of Acequia; and implementation of the Plan. See Acequia I, 787 F.2d at 1362 n. 17. Because the court perceived Clinton's shareholder claims to be a direct challenge to the implementation of the Plan, it held that they were within the bankruptcy court's exclusive jurisdiction and directed him to re-file them there.
 
 
 6
 Clinton subsequently did just that. The bankruptcy court, however, declined to exercise jurisdiction, stating:
 
 
 7
 This Court has jurisdiction to interpret and enforce confirmed bankruptcy plans. However, this Court does not have jurisdiction over other causes of action, like Clinton's claim for corporate waste, arising post-confirmation and not dependent on the plan of reorganization. Such an action neither arises under title 11, nor arises in this bankruptcy proceeding. Nor is such an action related to this bankruptcy proceeding. Rather, Clinton's corporate waste action arises exclusively out of his post-confirmation rights as a shareholder of the debtor. His rights as a shareholder are independent of the plan. Therefore, this Court does not have jurisdiction over Count II and possibly Count I of Clinton's complaint.
 
 
 8
 February 2, 1995 Summary Order at 3-4 (citation omitted). Thus, Clinton found himself facing the paradoxical situation in which every court to which he was directed refused to exercise jurisdiction over his claims.
 
 
 9
 We agree with the bankruptcy court that Counts One and Two derive from Clinton's rights as a shareholder and are independent of the Plan. Whatever their merit, they pose no threat to the Plan and are not barred by res judicata. We therefore find no independent basis for exercising federal jurisdiction over Counts One and Two, and hold that neither count supports removal jurisdiction from state court.
 
 Count Three
 
 10
 Both parties concede that Count Three, the claim for access to corporate records, is completely unrelated to any prior federal action and therefore cannot support removal jurisdiction.[4] Thus, although Acequia contends that it was deprived of a jury trial and denied due process by the district court's handling of Count Three, we do not reach the merits of the issues briefed. We find that none of Clinton's claims had sufficient federal character to support removal and, derivatively, that there was no supplemental jurisdiction over Count Three. Therefore, the district court's judgment on Count Three must also be vacated for lack of jurisdiction.
 
 Count Four
 
 11
 Count Four is a breach of contract claim. Clinton alleges that he and Rosemary Haley, whose son and estate remain parties to this action, entered an agreement on December 3, 1982 to liquidate the corporation by March 31, 1984. The district court held that this claim was litigated and decided adversely to Clinton in the bankruptcy confirmation proceedings and affirmed on appeal. We conclude, however, that Count Four as alleged neither was nor is ripe for determination. We therefore order the judgment on Count Four to be vacated for lack of jurisdiction.
 
 
 12
 This conclusion requires an explanation of Acequia's plan of reorganization and other previously litigated matters. The Plan required Acequia to pay $200,000 to Prudential Insurance Co., its largest creditor, and to issue Prudential an amended note in the amount of $4,578,395.26, to replace an existing promissory note. In 1987, Acequia brought a state court action against Prudential concerning the terms of the amended note. The settlement agreement, entered two years later, extended its maturity date by five years, to June 30, 1997. Clinton then brought an action to terminate the Plan, arguing that the settlement agreement impermissibly modified the note and, alternatively, that it constituted a novation that nullified the Plan. This court rejected both arguments, reasoning that the extension did not materially alter the Plan and that the parties did not contemplate a novation. See Acequia II, 1993 WL 219865, at * 2-3 (9th Cir. June 21, 1993).
 
 
 13
 The theory of Clinton's breach of contract claim is that Acequia has failed timely to liquidate the corporation. Acequia rejoins that the Plan does not require Acequia to liquidate, but at oral argument Acequia's counsel represented that, as a practical matter, Acequia's property will have to be sold in order to enable it to meet its obligations to Prudential by 1997. Clinton's counsel similarly explained at oral argument: "We feel that ... [Count Four] may not be ripe for reconsideration, or even to come before the court, until 1997." Thus, the parties agree that, if Count Four presents a claim at all, it is not a claim that is ripe for consideration until that time.
 
 
 14
 The "basic rationale" of Article III ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbott Labs. v. Gardner, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). Accordingly, "ripeness is peculiarly a question of timing," Regional Rail Reorganization Act Cases, 419 U.S. 102, 140, 95 S.Ct. 335, 357, 42 L.Ed.2d 320 (1974), and a federal court normally ought not resolve issues "involv[ing] 'contingent future events that may not occur as anticipated, or indeed may not occur at all.' " Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580-81, 105 S.Ct. 3325, 3333, 87 L.Ed.2d 409 (1985) (quoting 13A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3532 (1984)). In the absence of an immediate and certain injury to a party, a dispute has not "matured sufficiently to warrant judicial intervention." See Warth v. Seldin, 422 U.S. 490, 499 n. 10, 95 S.Ct. 2197, 2205 n. 10, 45 L.Ed.2d 343 (1975).
 
 
 15
 Under the facts and circumstances of this case, Clinton's breach of contract claim presents no live case or controversy. The parties agree that, if an agreement to liquidate the corporation even exists, Acequia has until 1997 to perform its obligation. We have no way of knowing whether Acequia will actually do so, but a case is not ripe where the existence of the dispute itself hangs on future contingencies that may or may not occur. Portland Police Ass'n v. City of Portland, 658 F.2d 1272, 1274 (9th Cir.1981); see also United Steelworkers v. Cyclops Corp., 860 F.2d 189, 194 (6th Cir.1988) (where party lacks "contractual rights that they could vindicate in this action, ... the prospective contractual claims are not ripe"). Thus, Count Four does not provide a basis for removal jurisdiction.
 
 Count Five
 
 16
 Count Five, in which Clinton seeks to recover his fifty-percent share of rents for the use of Desert Land Entry property from October 23, 1981 to the present, has a complicated procedural history. To understand how this history relates to the present appeal, we find it important to distinguish between the preconfirmation and postconfirmation portions of the rental claim. The district court addressed only the preconfirmation portion of the rental claim, since, at the time of its removal decision, that claim was also the subject of Acequia III, an adversary proceeding pending before this court. See 34 F.3d at 803. In Acequia III, Acequia sought to recover preconfirmation fraudulent transfers of funds Clinton allegedly had made from the corporation to himself. See id. Clinton claimed a setoff for the rental monies allegedly owing him. See id. at 817-18. Initially, the magistrate judge found that Clinton was not entitled to a setoff, but that the parties had reached an agreement regarding the postconfirmation rental period whereby Clinton was entitled to affirmative relief in the amount of postconfirmation rents.
 
 
 17
 While an appeal was pending in Acequia III, the district court concluded, on the basis of the magistrate judge's disposition of the adversary proceeding, that the preconfirmation portion of the claim was all that remained of Count Five. As to those years, 1981 to 1983, the court found Clinton's claims barred by the statute of limitations and by the Plan. Meanwhile, the Acequia III court, apparently uninformed that the district court declined to rule on the majority of Clinton's rental claim, reversed the magistrate judge, concluding that the entirety of the claim should be addressed in the present litigation. See id. at 818. Clinton understandably argues that each court has sent him to another, leaving no tribunal to address his claim. He therefore asks us to order the district court to address the postconfirmation portion of his claim, years 1984 to present, and to reverse its ruling on the preconfirmation portion of the claim.
 
 
 18
 We find, however, that Count Five, at the time it was pled in the initial state court action, as a whole lacked sufficient federal character to support removal under the artful pleading doctrine. Count Five pertains primarily to postconfirmation rentals from 1984 to the present and is completely unrelated to the Plan. Even assuming, arguendo, the preconfirmation portion of Clinton's actual claim is barred by the res judicata implications of the Plan, that portion of the claim is de minimis in comparison to the rest of Clinton's complaint and, indeed, the rest of Count Five. Bearing in mind that § 1441 "is strictly construed against removal," and that the artful pleading doctrine creates only "a narrow exception to the straightforward rules of removal jurisdiction," we conclude that this was not the kind of "exceptional circumstance[ ]" in which removal was appropriate. Sullivan, 813 F.2d at 1371, 1372 (quoting Salveson, 731 F.2d at 1427).
 
 CONCLUSION
 
 19
 In summary, none of the five counts in Clinton's state court complaint presents a federal claim capable of supporting removal. In consequence, we may not adjudicate the remaining state claims under the doctrine of supplemental jurisdiction. See 28 U.S.C. § 1367. Accordingly, we vacate the various judgments entered by the district court and remand these proceedings to the district court with instruction to remand the case in its entirety to state court.
 
 
 20
 VACATED AND REMANDED.
 
 
 
 *
 Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 In earlier litigation in 1986, this court upheld the bankruptcy court's confirmation of Acequia's Chapter 11 reorganization plan over Clinton's objection. Acequia, Inc. v. Clinton (In re Acequia, Inc.), 787 F.2d 1352 (9th Cir.1986) (Acequia I ). In 1993, this court affirmed, in an unpublished decision, the bankruptcy court's denial of Clinton's motion to terminate the plan. Clinton v. Acequia, Inc. (In re Acequia, Inc.), No. 91-36176, 1993 WL 219865 (9th Cir. June 21, 1993) (Acequia II ). In 1994, this court affirmed a judgment against Clinton for funds he had fraudulently transferred from Acequia while still in control thereof, and remanded for consideration of additional such claims. Acequia, Inc. v. Clinton (In re Acequia, Inc.), 34 F.3d 800 (9th Cir.1994) (Acequia III)
 
 
 [2]
 The district court denied Clinton's motion to remand the case to state court on September 17, 1991. In the minutes from the hearing on that motion, Judge Lodge indicated that a "[w]ritten opinion [was] to follow." Docket No. 35. The record contains no subsequent written opinion on that issue
 
 
 [3]
 Ordinarily, a case may only be removed within thirty days after the defendant's receipt of the initial pleading. 28 U.S.C. § 1446(b). Acequia asserts that it was not aware of the federal implications of the complaint until amended pleadings were filed on May 16, 1990. Acequia filed its notice of removal on June 7, 1990
 
 
 [4]
 In Count Three, Clinton seeks a writ of mandamus and statutory penalties in the amount of $50 per day for Acequia's alleged failure to produce corporate records, in violation of Idaho Code § 30-1-52. In its first summary judgment order, the district court granted summary judgment to defendant Michael Haley on all counts, including Count Three. In its second summary judgment order, the district court granted summary judgment to defendant Acequia on all counts except Count Three. The court then reassigned Count Three to another judge, the Honorable Jack E. Tanner, and set the case for a jury trial. On the day scheduled for trial, however, Judge Tanner struck the jury, ordered counsel for both parties to submit offers of proof, and decided the case upon the offers of proof, later awarding judgment to Clinton in the amount of $112,150 plus costs