**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In the Matter of: CATHY COLEMAN,
       *Debtor.*

EDUCATIONAL CREDIT MANAGEMENT
CORPORATION,
       *Appellant,*

   v.

CATHY COLEMAN,
       *Appellee.*

No. 06-16477

D.C. No.
CV-05-05231-SC

OPINION

Appeal from the United States District Court
for the Northern District of California
Samuel Conti, District Judge, Presiding

Argued and Submitted
May 14, 2008—San Francisco, California

Filed March 25, 2009

Before: Diarmuid F. O'Scannlain and
Michael Daly Hawkins, Circuit Judges, and
James V. Selna,* District Judge.

Opinion by Judge Hawkins

---

*The Honorable James V. Selna, United States District Judge for the
Central District of California, sitting by designation.

## COUNSEL

Curtis P. Zaun (argued) and Miriam Hiser (briefed), Educational Credit Management Corporation, St. Paul, Minnesota, for the appellant.

Lars T. Fuller (argued and briefed), The Fuller Law Firm, San Jose, California, for the appellee.

## OPINION

HAWKINS, Circuit Judge:

We consider whether "undue hardship" determinations—whereby bankruptcy courts decide whether student loans

qualify for discharge—are ripe in a Chapter 13 case substantially in advance of plan completion.

## FACTUAL AND PROCEDURAL HISTORY

Cathy Coleman filed for bankruptcy under Chapter 13 in 2004, and the bankruptcy court confirmed a five-year repayment plan. Coleman owes over $100,000 in student loans to Educational Credit. Since graduating from college, Coleman has been irregularly employed as a substitute teacher and art teacher, and was laid off in March of 2005. Just under a year after the plan was confirmed, Coleman sought a determination that it would constitute an undue hardship under 11 U.S.C. § 523(a)(8) for her to repay her student loans, and that her student loans should therefore not be excepted from discharge. Educational Credit moved to dismiss for lack of subject matter jurisdiction on ripeness grounds. The bankruptcy court denied the motion, *In re Coleman*, 333 B.R. 841 (Bankr. N.D. Cal. 2005), the district court affirmed the decision of the bankruptcy court, and Coleman appealed. After initially filing an Opinion in that appeal, *Educ. Credit Mgmt. Corp. v. Coleman* (*In re Coleman*), 2008 U.S. App. LEXIS 16424 (9th Cir. Aug. 1, 2008), this court noted that because the bankruptcy court's denial of Educational Credit's motion to dismiss was an interlocutory order, there was no appellate jurisdiction. Consequently, we vacated the Opinion and remanded the case to the district court in order to allow it to determine whether to certify this issue for appeal under 28 U.S.C. § 1292(b). *Educ. Credit Mgmt. Corp. v. Coleman* (*In re Coleman*), 539 F.3d 1168 (9th Cir. 2008). On remand, concluding that its order involved a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal of the issue would materially advance the termination of the litigation, the district court certified the matter for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## STANDARD OF REVIEW

We review the district court's decision on an appeal from a bankruptcy court de novo. *In re Daily*, 47 F.3d 365, 367 (9th Cir. 1995) (per curiam); *In re Siragusa*, 27 F.3d 406, 407 (9th Cir. 1994). "We apply the same standard of review to the bankruptcy court [decision] as does the district court: findings of fact are reviewed under the clearly erroneous standard, and conclusions of law, de novo." *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990). The issue of ripeness is a question of law. *Chang v. United States*, 327 F.3d 911, 921 (9th Cir. 2003).

## STATUTORY BACKGROUND

[1] Debtors who seek Chapter 13 relief commit to a three- to five-year period of repayment, after which their remaining debts are discharged.[1] Unlike Chapter 7 debtors, who are entitled to a discharge of debt as soon as their estate is liquidated and distributed,[2] Chapter 13 debtors are not entitled to a discharge of debts unless and until they complete payments to creditors under a three- to five-year plan.[3] 11 U.S.C.

---

[1] With the exception, of course, of those debts that are excepted from discharge under 11 U.S.C. § 523.

[2] *See* 11 U.S.C. § 727. In Chapter 7, the debtor's assets are liquidated and distributed among creditors, and there is no repayment plan. *Id.* § 726.

[3] Unless the difficult standard of 11 U.S.C. § 1328(b) is met, a discharge may be granted if the debtor fails to complete plan payments only if:

    (1)   the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;

    (2)   the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and

    (3)   modification of the plan under section 1329 of this title is not practicable.

11 U.S.C. § 1328(b).

§ 1328(a)(2).[4] Student loans are excepted from discharge unless the debtor can show "undue hardship." *Id.* §§ 523(a)(8), 1328(a)(2).[5] Coleman is currently making payments under her five-year Chapter 13 plan. She will not be entitled to discharge any of her debts until she completes this plan, and will not be entitled to discharge her student loans unless she can show "undue hardship."

[2] To show undue hardship, the debtor must show "(1) that she cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment portion of the student loans; and (3) that the debtor has made good faith efforts to

---

[4]Section 1328(a)(2) provides:

   (a) . . . [a]s soon as practicable after completion by the debtor of all payments under the plan, . . . the court shall grant the debtor a discharge of all debts provided for by the plan . . . except any debt—

   . . . .

      (2)   of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a).

11 U.S.C. § 1328(a).

[5]Section 523(a) provides in relevant part:

   (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

      (1)   for tax or a customs duty—

      . . . .

      (8)   unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for [qualified educational loans].

11 U.S.C. § 523(a).

repay the loans." *In re Saxman*, 325 F.3d 1168, 1172 (9th Cir. 2003).

The question before us is one of timing: may Coleman obtain this undue hardship determination substantially in advance of the time she completes payments under her Chapter 13 plan?

[3] Federal Rule of Bankruptcy Procedure 4007(a) provides that "A debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt." Under Federal Rule of Bankruptcy Procedure 4007(b), "[a] complaint other than under § 523(c)[6] may be filed at any time."[7] Coleman argues that this Rule shows that the undue hardship determination is ripe at any time, while Educational Credit argues that, because Coleman cannot obtain a discharge unless and until she completes payments under the plan, the undue hardship determination is not ripe until at or near the time Coleman completes plan payments.

### 1.    Constitutional Ripeness

[4] Ripeness has two components: constitutional ripeness and prudential ripeness.[8] *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). "The constitutional ripeness of a declaratory judgment action depends upon 'whether the facts alleged, under all the circum-

---

[6]Section 523(c) provides that debtors shall be discharged from debt incurred from fraud or willful and malicious injury absent notice and a hearing, which must be filed within 60 days after the first meeting of creditors pursuant to Federal Rule of Bankruptcy Procedure 4007(c).

[7]These Bankruptcy Rules apply equally to debtors filing under Chapter 7 and debtors filing under Chapter 13.

[8]Educational Credit states that it is challenging only the court's jurisdiction and is not appealing the component of the bankruptcy court's decision that holds the court will not exercise its discretion to delay determination of undue hardship until discharge is imminent; however, some of the bankruptcy court's analysis is relevant to our ripeness determination.

stances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *United States v. Braren*, 338 F.3d 971, 975 (9th Cir. 2003) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)); *see also Hulteen v. AT&T Corp.*, 498 F.3d 1001, 1004 n.1 (9th Cir. 2007) (en banc) (finding jurisdiction because "substantial controversy" requirement was met).

[5] The issues presented must be "definite and concrete, not hypothetical or abstract." *Thomas*, 220 F.3d at 1139 (internal quotation marks omitted). Where a dispute hangs on "future contingencies that may or may not occur," *Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir. 1996), it may be too "impermissibly speculative" to present a justiciable controversy. *Portland Police Ass'n v. City of Portland*, 658 F.2d 1272, 1273 (9th Cir. 1981). "The constitutional component of ripeness is a jurisdictional prerequisite." *United States v. Antelope*, 395 F.3d 1128, 1132 (9th Cir. 2005).

[6] A "substantial controversy" arose between Coleman and Educational Credit when Coleman filed for bankruptcy protection under Chapter 13: Coleman's purpose in filing was to seek the discharge of her student loans, and Educational Credit seeks to prevent this. Further, the controversy here is certainly "definite and concrete, not hypothetical or abstract,"[9] because it is a controversy between Coleman and Educational Credit over a specific and defined debt.

[7] It is true that Coleman's actual discharge of her student loans will only occur, if at all, when she completes payments under the plan. 11 U.S.C. § 1328(a)(2). If she does not complete her plan payments, there will be no discharge.[10]

---

[9] *Thomas*, 220 F.3d at 1139 (internal quotation marks omitted).

[10] Unless, again, she can satisfy the difficult standard of § 1328(b). *See supra* n.2.

But plan completion is a single factual contingency — not a "series of contingencies" rendering the decision "impermissibly speculative." *See Portland Police*, 658 F.2d at 1273, 1274. In *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1211 (9th Cir. 2006) (per curiam), this court concluded that a challenge to the enforceability of a French court injunction was constitutionally ripe even though enforcement of that injunction had yet to be sought.[11] If this factual contingency did not render the dispute so "impermissibly speculative" that it failed to meet the "case or controversy" requirement, it is difficult to see how the dispute between Coleman and Educational Credit would not also qualify as constitutionally ripe. Just as Coleman could fail to complete her plan payments, parties to the *Yahoo!* dispute at the time ripeness was at issue could have decided not to seek the enforcement of its injunction in the United States.[12] The dispute here is constitutionally ripe.

**2.   Prudential Ripeness Test**

The Supreme Court has held that "[p]roblems of prematurity and abstractness may well present 'insuperable obstacles' to the exercise of the Court's jurisdiction, even though that jurisdiction is technically present." *Socialist Labor Party v. Gilligan*,[13] 406 U.S. 583, 588 (1972) (citing *Rescue Army v. Mun. Court*, 331 U.S. 549, 574 (1947)).

---

[11]In *Yahoo!*, eight judges agreed that the issue was constitutionally ripe for adjudication, although three of the eight judges concluded that the issue was not prudentially ripe. Three judges voted to dismiss for lack of personal jurisdiction. 433 F.3d at 1201.

[12]In *Clinton*, the court declined to decide whether an agreement to liquidate existed because several years remained before the party would be required to perform. 94 F.3d at 572. There, however, the parties *agreed* that the issue was not ripe because it appeared likely that the company would liquidate regardless of the decision. *Id.* Here, by contrast, there is not a substantial likelihood that Coleman will be able to pay all of her student loans regardless of the outcome of the undue hardship decision.

[13]*Socialist Labor Party* dealt with the constitutionality of Ohio's election laws. 406 U.S. at 584.

**[8]** The Supreme Court has developed a two-part test for determining the prudential component of ripeness in the administrative context: "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).[14] Originally, we generally applied this two-part test in making prudential ripeness determinations without strictly limiting the test to the administrative law context. *See*, *e.g.*, *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 850 (9th Cir.), *amended on denial of reh'g*, 312 F.3d 416 (9th Cir. 2002); *Knight v. Kenai Penninsula Borough Sch. Dist.*, 131 F.3d 807, 814 (9th Cir. 1997); *In re Dominelli*, 788 F.2d 584, 585 (9th Cir. 1986).

**[9]** However, in *Principal Life Insurance Co. v. Robinson*, 394 F.3d 665 (9th Cir. 2005), we held that *Abbott* does not apply to private contract disputes, and suggested that the test may only be appropriate in the administrative law context. The court noted, because an administrative action "has consequences for many members of the general public," it is "prudent for courts to limit their review of such actions to those involving the possibility of concrete injury greater than speculative or remote financial contingencies." *Id.* at 670-71. The court also observed that the concerns expressed in *Abbott* over "judicial entanglement," "allocation of authority," and the risks of "wide-ranging and remote adverse consequences" in administrative agency actions do not apply to private party contract disputes. *Id.* at 671.

The court then declined to apply the *Abbott* test to a private party contract dispute over a rent-adjustment provision, finding the matter ripe even though the provision was contingent

---

[14]The dispute at issue in *Abbott* was over a prescription drug labeling statutory requirement, namely, whether the established name of the drug must be used every time the propriety name is employed. 387 U.S. at 137-39.

upon future property value. Noting that "the fundamental role of the courts is to resolve concrete and present disputes between parties," the court held that the proper test for ripeness in private party contract disputes is "the traditional ripeness standard, namely, whether 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *Id.* at 671 (quoting *Md. Cas. Co.*, 312 U.S. at 273).[15]

*Principal* does not tell us whether the *Abbott* test would be appropriate in this context—a private party dispute that is governed not by contract but by the Bankruptcy Code. However, prior to *Principal*, disputes in the bankruptcy context were subjected to the *Abbott* ripeness test. *See*, *e.g.*, *Dominelli*, 788 F.2d at 585-86 (dispute as to whether debtor's estate could be required to pay legal expenses of creditor committee ripe under *Abbott* test even though counsel had not yet sought fees); *In re Gen. Carriers Corp.*, 258 B.R. 181, 186 (B.A.P. 9th Cir. 2001) (dispute over bankruptcy court's jurisdiction to enter abstention order ripe under *Abbott* test). Because *Principal* did not (and could not) overrule *Dominelli*'s application of *Abbott* in the bankruptcy context, we must apply *Abbott* here.[16]

---

[15]Because this standard is the *constitutional* component of ripeness, *Principal*'s holding essentially eliminated the prudential component from ripeness determinations in private party contract disputes.

[16]We note, however, that there is considerable tension between the reasoning in *Principal* and *Dominelli*'s application of *Abbott*. The reasoning *Principal* employed to reject the *Abbott* test in private party disputes applies to many disputes in the bankruptcy context. Generally there will not be a risk of "judicial entanglement in administrative agency actions" nor "allocation of authority concerns." *Principal*, 394 F.3d at 671. Of course, where the bankruptcy court must interpret a Code provision, for example, the decision may "ha[ve] consequences for many members of the general public," or even potentially "wide-ranging and remote adverse consequences," *id.*, necessitating the searching prudential inquiry provided by *Abbott*. Cases like this, however, which involve a unique case-specific

### 3.  Prudential Ripeness Here

#### A.  Background

Turning to the specific inquiry at hand, we note that Courts of Appeal are currently split as to whether student loan dischargeability determinations are ripe substantially in advance of plan completion. Most courts to address the issue do not specify which ripeness standard they are employing. The Ninth Circuit Bankruptcy Appellate Panel ("BAP") has held that the issue of student loan dischargeability is ripe before the completion of plan payments. *In re Taylor*, 223 B.R. 747, 751-52 (B.A.P. 9th Cir. 1998), *overruled on other grounds by Saxman*, 325 F.3d at 1175.[17] Without explicitly applying the

---

inquiry rather than an interpretive endeavor, are unlikely to have "wide-ranging and remote adverse consequences." Because they are necessarily fact-intensive, the fitness prong of the *Abbott* test maps onto them poorly: The traditional formulation of that rule is that a case is more likely to be "fit" if it involves "pure legal questions that require little factual development," *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996), but, as we discuss, bankruptcy courts often must decide questions that are almost exclusively factual and require a good deal of factual development. Although the "fitness" prong of the *Abbott* test does not preclude factual inquiries where further delay would not aid in the decision, *Principal* suggests that the better route may be to recognize that the concerns motivating *Abbott* are not present here and do not justify its application in this context.

[17]Educational Credit argues that *Taylor* conflicts with *In re Heincy*, 858 F.2d 548, 550 (9th Cir. 1988). There, the debtor sought a dischargeability determination for criminal restitution debt. However, whether that debt was excepted from discharge *depended* on whether the debtor completed plan payments, because the standards for dischargeability of criminal restitution differed depending on whether the debtor completed the plan. 858 F.2d 548 at 550. The court reasoned, "Because the plan is still in progress, the bankruptcy court could not have known which discharge provision [§§1328(a) or (b)] would apply," and it was highly unlikely the restitution payments would be dischargeable in any event. *Id.* However, this reasoning does not apply in the student loan context. In the student loan context, the standard for nondischargeability is the same whether it is excepted

*Abbott* test or any particular ripeness standard, the BAP reasoned that the issue was ripe because Bankruptcy Rule 4007(b) expressly permits the filing of a § 523(a)(8) complaint "at any time," and no statute or policy conflicts with the filing of such a complaint at any time. *Taylor*, 223 B.R. at 751-752.

The Fourth Circuit has also held that undue hardship determinations may be ripe in advance of plan completion. *In re Ekenasi*, 325 F.3d 541, 547 (4th Cir. 2003). The court expressly "decline[d] to adopt a hard and fast rule which would preclude bankruptcy courts from ever entertaining a proceeding to discharge student loan obligations until at or near the time the debtor has completed payments under a confirmed Chapter 13 plan." A bankruptcy court in the Southern District of Ohio also took this approach. *In re Strahm*, 327 B.R. 319, 323-24 (Bankr. S.D. Ohio 2005).[18]

---

under §§ 1328(a) or (b). *See* 11 U.S.C. §§ 523(a), 1382(a)(2). In other words, in *Heincy*, the court had no legal framework to apply to the dischargeability determination prior to plan completion. Not so with student loan dischargeability determinations. Because *Heincy*'s ripeness conclusion was determined by the bankruptcy court's inability to decide the dischargeability question at that point, and because the court found it highly unlikely that criminal restitution would ever be dischargeable, the holding has no bearing on the ripeness of undue hardship determinations prior to plan completion. *Heincy* did not conclude that no case or controversy existed, and we assume that the ripeness conclusion was a prudential one —the court understandably declined to undertake an inquiry that both lacked an applicable standard and would more than likely never take effect.

[18]Educational Credit faults these courts for failing to address the jurisdictional question, but, again, the question is jurisdictional only if it speaks to *constitutional* ripeness rather than *prudential* ripeness—if a matter is constitutionally ripe, the court may decline to consider it for prudential reasons, but it does not lack jurisdiction to consider the case. The courts taking the opposite approach do not address the jurisdictional question either.

Two Courts of Appeal disagree with *Taylor*. The Eighth Circuit, without applying any particular ripeness test,[19] held that, in undue hardship determinations, "the factual question is whether there is undue hardship at the time of discharge, not whether there is undue hardship at the time that a § 523(a)(8) proceeding is commenced." *In re Bender*, 368 F.3d 846, 848 (8th Cir. 2004). The court reasoned that student loan dischargeability proceedings "should take place relatively close to [the date of discharge] so that the court can make its determination in light of the debtor's actual circumstances at the relevant time." *Id.* Similarly, the Fifth Circuit has held, in contrast to *Taylor*, that the undue hardship determination is not ripe until plan completion because dischargeability is not available until plan completion.[20] *In re Rubarts*, 896 F.2d 107, 109 (5th Cir. 1990).[21]

[10] Applying *Abbott*, we agree with the Fourth Circuit and with the Ninth Circuit BAP that an undue hardship determination can be ripe substantially in advance of plan completion.

---

[19]The bankruptcy court below did employ the *Abbott* test. *In re Bender*, 297 B.R. 126, 132 (Bankr. D. Neb. 2003).

[20]The Fifth Circuit court cited *In re Heincy* for the proposition that "Under both the express wording of section 1328(a) and Bankr.R. 4007(d), an objection to dischargeability cannot be filed nor heard prior to the occurrence of one of those two events." *Rubarts*, 896 F.2d at 109. However, this misunderstands *Heincy*'s holding, which was only that a criminal restitution dischargeability determination should not be made prior to plan completion, given the differing standards depending upon whether payments were completed. The *Taylor* court distinguished *Heincy* on the grounds that the debt at issue there was for criminal restitution, not student loans, without clarifying that the dischargeability determination could not be made prior to plan completion in the latter case. *See Taylor*, 223 B.R. at 751.

[21]Several bankruptcy courts have also agreed with that approach. *See*, *e.g.*, *In re Pair*, 269 B.R. 719, 721 (Bankr. N.D. Ala. 2001); *In re Soler*, 250 B.R. 694, 697 (Bankr. D. Minn. 2000); *In re Raisor*, 180 B.R. 163, 166 (Bankr. E.D. Tex. 1995).

B.   Fitness

**[11]** The purpose of the "fitness" test under *Abbott* is to delay consideration of the issue until the pertinent facts have been well-developed in cases where further factual development would aid the court's consideration. *See*, *e.g.*, *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 812 (2003) (further factual development would "significantly advance our ability to deal with the legal issues presented" so the matter determined not ripe for judicial review) (internal quotation marks omitted); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) (regulation ordinarily not ripe for review "until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him"); *Earth Island Inst. v. Ruthenbeck*, 490 F.3d 687, 695 (9th Cir. 2007) (issue not fit for review absent proper factual context to aid court's determination); *Natural Res. Def. Council, Inc. v. EPA*, 22 F.3d 1125, 1133 (D.C. Cir. 1994) (considering "whether consideration of the issue would benefit from a more concrete setting" in determining whether an issue is "fit" under the *Abbott* test).

**[12]** Although a case is more likely to be "fit" if it involves "pure legal questions that require little factual development," *San Diego County Gun Rights Committee*, 98 F.3d at 1132, fact-intensive inquiries that depend on further factual development may nevertheless be ripe if, as here, that development would do little to aid the court's decision. In the bankruptcy context, there are many situations in which the factual context may never be ideally well-developed. Congress has given bankruptcy courts the task of undertaking complex factual inquiries that depend, by their very nature, on future events and contingencies. Whether a bankruptcy court decides to lift an automatic stay depends upon its assessment of the debtor's ability to adequately protect against future decline in the collateral's value and ultimately successfully reorganize. 11

U.S.C. §§ 362(d), 363(e); *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 377 (1988). At that moment the bankruptcy court essentially must predict whether the debtor is doomed or has some reasonable chance of rehabilitation. Whether a bankruptcy court decides to confirm a Chapter 13 plan depends upon the likelihood that the debtor will be able to make all required payments under the plan. 11 U.S.C. § 1325(a)(6). In all of these situations, delay is unlikely to provide much, if any, additional benefit to the bankruptcy court's resolution of the issue.

**[13]** The same is true here: The undue hardship inquiry itself contemplates factual contingencies many years into the future. *See Coleman*, 333 B.R. at 847. Under the second prong of the undue hardship test, the debtor must show that "additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans." *Saxman*, 325 F.3d at 1173. Many student loan repayment periods are thirty years in duration—a "significant portion" of this period is far longer than the duration between the initiation and conclusion of the Chapter 13 plan. A determination of lack of ripeness due to the factual contingency of the debtor's financial situation makes little sense since the court must always speculate on debtor's financial situation years into the future.

**[14]** Educational Credit also argues that the determination whether "the debtor has made good faith efforts to repay the loans," *Saxman*, 325 F.3d at 1173, cannot be made until at or near plan completion. However, whether it is premature for the court to make such a determination varies depending on each debtor's situation. *See*, *e.g.*, *Ekenasi*, 325 F.3d at 547. If the debtor has been trying in vain to make student loan payments for the past fifteen years, the facts may be sufficiently well developed for the court to conclude that the debtor made good faith efforts to repay. If, on the other hand, the debtor files for bankruptcy immediately upon graduating from college, it will likely be necessary to wait the duration of the plan

before a good faith determination is possible. Here Coleman has been trying to repay her student loans since 1999, which seems to us a sufficient amount of time for the bankruptcy court to evaluate whether she has made a good faith attempt at repayment.

**[15]** We disagree with the Eighth Circuit's conclusion that bankruptcy courts should not make an undue hardship determination until the time of discharge because "the factual question is whether there is undue hardship at the time of discharge, not whether there is undue hardship at the time that a § 523(a)(8) proceeding is commenced." *Bender*, 368 F.3d at 848. The bankruptcy court below correctly noted that there is no clause in § 523(a)(8) specifying that the undue hardship must exist exactly at the time of discharge. *Coleman*, 333 B.R. at 849. The Fourth Circuit's approach permits a debtor to choose the "snapshot date" for determining undue hardship on the grounds that the "text of the pertinent statute does not prohibit such an advance determination." *Ekenasi*, 325 F.3d at 547.

This approach is consistent with the statute and makes sense in light of Bankruptcy Rule 4007(b). While that rule could not, of course, render a constitutionally unripe matter ripe, it counsels in favor of a finding of prudential ripeness.

C.  Hardship

**[16]** Hardship to the debtor from postponing a decision in this situation supports a finding of ripeness. *Abbott*, 387 U.S. at 149. Here, the hardship to Coleman is committing to a Chapter 13 plan for three to five years without any guarantee that her student loans will be discharged at the end of this time period. Because debtors must commit *all* of their disposable income to payments under a Chapter 13 plan, 11 U.S.C. § 1325(b)(1)(2), five years repayment is a considerable burden to bear without any guarantee that the debt will be ultimately discharged. 11 U.S.C. § 1328(a)(2).

Theoretically, Coleman could convert her case to a Chapter 7 bankruptcy, assuming that she meets the requirements for filing under that Chapter,[22] and receive a discharge under 11 U.S.C. § 727(a). However, it appears the reason Coleman filed under Chapter 13 rather than Chapter 7 was that she was unable to afford an up-front payment for the undue hardship litigation. In Chapter 7, debtors' attorneys may not be paid from the estate, so unless the attorney is paid up-front, she is unlikely to be paid.[23] In a Chapter 13, however, the attorney is often paid as part of the plan.[24]

Because Coleman apparently cannot finance the undue hardship litigation up-front, she would have to proceed with the undue hardship litigation pro se, if at all.

A fundamental purpose driving the bankruptcy system is to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." *Local Loan v. Hunt*, 292 U.S. 234, 244 (1934). Debtors who are primarily burdened by student debt will not emerge from bankruptcy with a "fresh start" if those student loan debts are not dischargeable—and if they are forced to pursue the undue hardship matter pro se, the likelihood of a

---

[22]*See* 11 U.S.C. § 727(b).

[23]*See*, *e.g.*, *Lamie v. U. S. Trustee*, 540 U.S. 526, 534-36 (2004).

[24]Unlike Chapter 7 cases, attorneys' fees in Chapter 13 cases are normally paid out of the plan as an administrative expense. Bankruptcy Code 11 U.S.C. § 503(b)(2) allows administrative expense status for compensation awarded under Code § 330(a). Bankruptcy Code § 330(a) allows compensation for a professional person employed under § 327. Although compensation under those provisions is limited to attorneys for the trustee, not for the debtor, *Lamie*, 540 U.S. at 534-36, it is common for this distinction to be blurred in Chapter 13 cases because a Chapter 13 debtor exercises some of the powers of a trustee. 11 U.S.C. § 1303. This results in attorneys' fees being paid as administrative expenses in Chapter 13 cases. Pursuant to 11 U.S.C. § 1326(b)(1), these fees are often paid early in the case.

successful undue hardship hearing is probably substantially reduced given the complexity of the inquiry. *See generally*, Feather D. Baron, *The Nondischargeability of Student Loans in Bankruptcy: How the Prevailing "Undue Hardship" Test Creates Hardship of Its Own*, 42 U.S.F. L. Rev. 265 (2007). Because the undue hardship standard is extremely difficult to meet,[25] a debtor who would meet the undue hardship standard and yet is unable to obtain an undue hardship determination because it is not yet ripe may be forced to rely on public benefits—or may turn to credit as a means of meeting their basic needs. *See generally*, Elizabeth Warren, *Less Stigma or More Financial Distress: An Empirical Analysis of the Extraordinary Increase in Bankruptcy Filings*, 59 Stan. L. Rev. 213 (2006). In a case where a debtor faces genuine undue hardship from student loan debt, the debtor's best shot at a fresh start may be to litigate the matter in a Chapter 13 case.[26]

---

[25]*See*, *e.g.*, *Brunner v. N.Y. State Higher Educ. Serv. Corp.* (*In re Brunner*), 46 B.R. 752, 753 (Bankr. S.D.N.Y. 1985), *aff'd*, 831 F.2d 395 (2d Cir. 1987) (noting that "[t]he existence of the adjective 'undue' indicates that Congress viewed garden-variety hardship as [an] insufficient excuse for a discharge of student loans").

[26]An additional reason for permitting undue hardship determinations to be made closer to the time of filing is that the amount of repayment to the student loan creditor through the plan may vary depending upon whether the loans are dischargeable. Section 1322(b)(1) provides that a plan may create a class of claims that is treated differently from other unsecured claims if the plan does not discriminate unfairly. Section 1322(b)(1) provides that a debtor's plan may "designate a class or classes of unsecured claims, as provided in section 1122 of this title, but [the plan] may not discriminate unfairly against any class so designated." The debtor or trustee may wish to seek to confirm a plan that classifies the student loan creditor differently from other creditors depending on whether the student loan creditor is entitled to payments after the completion of the plan and subsequent discharge. Although non-dischargeability alone is not a sufficient reason for permitting debtors to classify student loans differently from other debt, if discrimination furthers the goals of the debtor, satisfies the purposes behind Chapter 13, and does not require any creditor or group of creditors to bear an unreasonable burden, the debtor may be able to

**[17]** Prudential ripeness considerations do not warrant taking the undue hardship determination away from the bankruptcy court at the time when its resolution may be integral to successful completion of the plan. Absent a constitutional ripeness impediment to the undue hardship determination—which does not exist here—we see no prudential reason to delay the determination where the record, as here, is sufficiently well-developed for the bankruptcy court to undertake the analysis.

**AFFIRMED.**

---

make greater payments to the student loan creditors under the plan. *In re Sperna*, 173 B.R. 654, 660-61 (B.A.P. 9th Cir. 1994.). Because one of the key purposes of the Bankruptcy Code is to provide the debtor with a "fresh start," the plan might classify the student loan creditor for greater repayments so that the debtor has less student loan debt remaining upon emerging from bankruptcy. *See*, *e.g.* Seth J. Gerson, *Separate Classification of Student Loans in Chapter 13*, 73 Wash. U. L.Q. 269, 278-79 (1995). Without an undue hardship determination, this classification analysis is greatly impeded. A resolution of the undue hardship question will certainly aid the bankruptcy court and the parties as they move forward with the Chapter 13 plan.